Tyler J. Garrett, WSB # 6-4400
Kari A. Hartman WSB # 8-6507
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY 82003-1208
(307) 634-7723
(307) 634-0985 (fax)
tgarrett@hkwyolaw.com
khartman@hkwyolaw.com

Jeffrey B. Charkow
Owen K. Newman
Alex W. Karasik
John D. Cooke
Chris Chasin
Duane Morris LLP
190 South LaSalle Street, Ste. 3700
Chicago, IL 60603
(312) 499-6701
jbcharkow@duanemorris.com
oknewman@duanemorris.com
awkarasik@duanemorris.com
jdcooke@duanemorris.com
cjchasin@duanemorris.com

ATTORNEYS FOR PLAINTIFF
CODY LANE DEVELOPMENT CORP.

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

| | |
|---|---|
| CODY LANE DEVELOPMENT CORP., <br><br> Plaintiff, <br> v. <br><br> LAYTON CONSTRUCTION COMPANY, LLC, <br><br> Defendant, Counter-Claimant, and Third-Party Plaintiff. | Case No. 24-CV-00064-KHR |
| Related Third Party Claims. | |

**CODY LANE DEVELOPMENT CORP.'S MOTION TO COMPEL PRODUCTION OF LAYTON CONSTRUCTION'S CLAIMED PRIVILEGED COMMUNICATIONS**

## Introduction

Layton's evolving privilege logs improperly assert attorney-client and work product protections over hundreds of communications between non-attorneys – most notably between Michael Colligan and other Layton construction personnel working on the Hoback Project. However, as the Court observed at the evidentiary hearing, Mr. Colligan testified that: (1) he is not an attorney; and (2) from January 2023 through termination, he served full-time as the Project Executive on the Hoback Project. Ex. 1 – 12.15.25 Hrg. Tr., pp. 54:5–6, 27:14–28:2. Mr. Colligan further confirmed that once he was assigned as the Project Executive for the Hoback Project in January 2023, he no longer held the title of vice president of contracts and project oversight. *Id*. At his recent deposition, Mr. Colligan reaffirmed his non-legal role on the Hoback Project from January 2023 onward. Ex. 2 – 12.18.25 Colligan Depo., pp. 21-29, 145.

Mr. Colligan's role as Project Executive was to manage the Hoback Project, not to shield documents as part of a legal strategy to build a case against Cody Lane. Yet, despite the undisputed evidence, Layton continues to assert attorney-client privilege over 353 emails involving Mr. Colligan and other non-attorney construction personnel, claiming that "at all relevant times" Mr. Colligan acted in a "paraprofessional" capacity. Ex. 3 – 12.19.25 Priv. Log. Layton's attempt to claim attorney-client privilege for a purported paraprofessional role lacks a legal or factual basis.[1] Mr. Colligan's recent concessions at the evidentiary hearing and deposition also impact redacted communications that Layton hurriedly produced on 12.16.25, before the informal teleconference was held with the Court. *See* Ex. 4 - 12.16.25 Email & Attachments.

---

[1] For arguments sake, even if Mr. Colligan was somehow working on the Project in his role as a legal paraprofessional, the attorney-client privilege does not automatically attach merely because an individual works in an in-house legal department. The privilege protects confidential communications between an attorney and client made for the purpose of seeking or providing legal advice, not construction communications about building the Hoback Project.

1

Layton's work product claims are equally flawed. As the Court knows, a two-part test is applied that limits Layton's overreach. *Logistiques Trans-W., Inc. v. Reynolds*, No. 08-CV-212-J, 2009 WL 10669566, at *3 (D. Wyo. Mar. 27, 2009) ("This Court has consistently applied a two-prong test to determine whether the protections of the work product doctrine apply."). "First, the party asserting the protections of the doctrine must establish that the documents were created for the purpose of anticipated litigation." *Id.* "There must be more than an anticipation of the possibility or likelihood of litigation before documents otherwise created in the ordinary course of business are considered work product." *Id.* "In other words, there must be a substantial likelihood that litigation is imminent." *Id.* "The second prong of the test requires the party asserting the protections of the doctrine to establish that the documents created in 'anticipation of litigation' were prepared by or under the direction of an attorney, or other individuals included in Rule 26(b)(3)(A)." *Id.*

Layton's work product designations plainly fail both prongs. The withheld communications concern construction issues such as inspections, roof work, and pricing options, all of which occurred well before Layton's termination and without any objective basis that there was a substantial likelihood of imminent litigation. Accordingly, the Court must compel production of these communications or, at minimum, conduct an *in-camera* review. Doing so imposes no harm and promotes transparency, consistent with the narrow scope of privilege under Rule 26(b)(3).

## Factual Background

Layton's discovery tactics are evidenced by delay, inconsistency, and overreach. To date, Layton has issued twenty-two separate supplemental productions – piecemealed and staggered over thirteen months. For instance, Layton dumped more than 100,000 documents in the last four

months as the discovery deadline loomed. *See* Ex. 4 - 12.16.25 Email & Attachments; Ex. 5 – Emails & Supplemental Disclosures from 9.25 – 12.15.

Cody Lane has diligently analyzed Layton's twenty-two supplemental productions and timely raised concerns about custodian gaps and other issues with Layton's productions. *See* ECF Nos. 302, 328, & 335. On 11.20.25, Cody Lane sent a detailed letter to Layton identifying improper privilege claims listed on Layton's initial privilege log and requested a meet-and-confer by 11.24.25. Ex. 6 – 11.20.25 Correspondence. Layton did not respond until 12.3.25, generally denying any deficiencies and attempting to justify its privilege designations by issuing a blanket disclaimer that all non-attorney personnel in its legal department were "always acting at the direction and supervision of counsel." Ex. 7 – 12.3.25 Correspondence.

Layton's assertion is tenuous. Indeed, at the 12.15.25 Evidentiary Hearing, Mr. Colligan testified he is not an attorney and that by January 2023, he had transitioned fulltime to Project Executive – the highest-ranking member of Layton's construction team working on the Hoback Project. Ex. 1 – Hrg. Tr. 54:5–6, 27:14–28:2. Mr. Colligan's deposition on 12.18–19.25, reinforced his construction-based non-legal role whilst working on the Hoback Project. He testified that after becoming the Project Executive (replacing Bill Munck), he oversaw Layton's entire construction team on the Hoback Project, including construction managers and superintendents such as Robert Minhondo, Doug Brown, and Richard Smythe. Ex. 2 – Colligan Depo, pp. 26:8-29:25. Despite this, Layton's privilege logs (plural) continue to assert that "at all relevant periods" Mr. Colligan was acting as vice president of contracts and project oversight within the legal department.

The evolution of Layton's privilege logs further illustrates its overreach. The following data reflects withheld communications between Mr. Colligan and non-attorneys during the period after he transitioned to Project Executive in January 2023, which Layton has claimed as privileged:

3

- Layton provided a privilege log with its 16th Supplemental Disclosures on 9.24.25, claiming privilege over 467 of Mr. Colligan's communications. Ex. 8 – 9.24.25 Privilege Log. By 12.3.25, that number dropped to 450 communications. Ex. 9 – 12.3.25 Email & Priv. Log.

- In a three-day span from 12.16.25 to 12.19.25, Colligan's communications claimed to be privileged went from 301 to 453. Ex. 10 - 12.16.25 Email & Priv. Log; Ex. 3 – 12.19.25 Priv. Log.

- By 12.19.25, Layton's latest privilege log asserts over 2,850 Colligan-related entries as privileged – more than twice the number of Colligan communications actually produced. Ex. 3 – 12.19.25 Priv. Log.

Mr. Colligan's communications are important to the case, as he was Layton's Project Executive overseeing the construction of the Hoback Project during a crucial period. The subject communications concern construction issues and project administration – such as stop-work notices, roof defects, pricing options, and scheduling issues – which occurred well before termination and without any objectively reasonable anticipation of litigation. Layton's evolving privilege logs and general assertions are not grounded in law; rather, they are a tactical effort to obfuscate effective discovery. The Court should compel production or, at minimum, conduct an *in-camera* review to ensure compliance with Federal Rule of Civil Procedure 26(b)(3).

**Legal Standard**

"The party seeking to assert the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing that either or both is applicable." *Barclaysamerican Corp. v. Kane,* 746 F.2d 653, 656 (10th Cir. 1984). In diversity cases, attorney-client privilege is governed by state law and the work product doctrine is governed by federal law. *Cornhusker Cas. Co. v. Skaj*, 2012 WL 12541138, at *2-3 (D. Wyo. June 13, 2012). Under Wyoming law, the party asserting attorney-client privilege must describe with sufficient detail the materials sought to be withheld and provide the "precise reasons" for objecting to its production. *WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit*, 2021 WY 61, ¶ 51, 486 P.3d 964, 977-78 (Wyo. 2021). To satisfy

4

this burden, it is insufficient to make a blanket assertion that such documents contain privileged information. *Id*. The asserting party must make a clear showing that the privilege applies, and failure to establish any element necessary for the claimed privilege causes the entire privilege claim to fail. *Id.* Again, as to claiming work product governed by federal law, the party asserting the protections of the doctrine must establish that: (1) the documents were created for the purpose of anticipated litigation; and (2) the documents created in "anticipation of litigation" were prepared by or under the direction of an attorney, or other individuals included in Rule 26(b)(3)(A). *Logistiques Trans-W., Inc.*, 2009 WL 10669566, at *3.

When a party seeks *in-camera* review, courts require "some bases or grounds for conducting in camera review" before proceeding. *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 621 (D. Kan. 2014). The Court has previously conducted *in-camera* reviews to determine whether the attorney-client privilege applies. *See Management Nominees, Inc. v. Alderney Investments, LLC*, 2013 WL 11374511 at 2 (D. Wyo. Nov. 23, 2013).

## ARGUMENT

I. **The Court Should Compel Production of Layton's Improperly Withheld Non-Attorney Communications.**

   A. **Layton has Improperly Withheld 355 Non-Attorney Communications Between Mr. Colligan and Project Personnel.**

Layton has not met its burden to establish attorney-client privilege over the withheld communications involving Mr. Colligan and Layton's construction personnel on the Hoback Project. The privilege applies only to communications made between privileged persons (i.e., attorneys, clients, and any of their agents that help facilitate the communications or legal representation) in confidence and for the purpose of seeking or providing legal assistance. *Hedquist v. Patterson*, 215 F.Supp.3d 1237, 1244 (D. Wyo. 2016). Under Federal Rule of Civil Procedure 26(b)(5), the asserting party must describe the materials with sufficient detail and

5

provide precise reasons for withholding them. *See also* U.S.D.L.R. 34.1(c). Blanket claims are not sufficient. *Elsasser v. Devon Energy Production Company, L.P.*, 2022 WL at 17488164 at 3 (D. Wyo. Dec. 7, 2022).

Specifically for the period from January 2023 through termination (3.11.24), Layton's claimed basis for privilege of Mr. Colligan's emails is that they contain communications concerning "strategy" and "matters in dispute." *See e.g.,* Ex. 10 - 12.16.25 Email & Priv. Log. However, Layton's claim is unconvincing because Mr. Colligan was the Project Executive during that time on the Project. *See* Ex. 1 – Hrg. Tr. 54:5–6, 27:14–28:2. Mr. Colligan is not an attorney, and any prior legal department role is immaterial. *Id.* The 355 emails at issue occurred while Mr. Colligan was part of Layton's construction team working on the Hoback Project and involve project personnel only.

Additionally, the notion that Mr. Colligan constantly remained under counsel's supervision after becoming Project Executive is unfounded. The record reveals Mr. Colligan operated independently, managing project execution not legal strategy. The baseless blanket claim that Mr. Colligan always functioned as an extension of counsel is further undermined by the data: Mr. Colligan's predecessor as Project Executive – Mr. Munck – generated only 8 communications without attorney involvement (7 of those involving Mr. Colligan) that were withheld allegedly due to attorney-client privilege. Ex. 3 – 12.19.25 Priv. Log. Conversely, focusing exclusively on the time frame Mr. Colligan succeeded Mr. Munck's role as Project Executive (January 2023), Layton has withheld 355 non-attorney communications involving Mr. Colligan under the guise of attorney-client privilege. Nothing about the Project Executive role changed. Mr. Colligan's subject communications are nothing more than routine project management, not legal advice. Precedent requires production.

Finally, Layton's privilege log fails to meet Local Rules and Federal Rule of Civil Procedure 26(b)(5)'s specificity requirement. Layton offers only generic descriptions like "strategy," "contract interpretation," and "matters in dispute," without identifying attorney involvement or explaining how each communication satisfies the privilege elements. Such vague, blanket claims fail as a matter of law. Because Layton has not shown that these communications were made for the purpose of obtaining legal advice or at counsel's direction, the Court should compel production. *Logistiques Trans-W., Inc.*, 2009 WL 10669566, at *3-4.

### B. Communications Involving Mr. Colligan Are Not Privileged Because The Predominant Purpose of His Communications Was Construction-Based.

The Court has recognized the necessity of distinguishing between communications made for the purposes of obtaining legal advice versus business guidance. *Elsasser*, 2022 WL 17488164, at *4-6 (granting motion to compel). The privilege only applies to communications between the client and lawyer if it constitutes legal advice. Even if the communication is confidential, attorney-client privilege does not attach to business advice. *Id.*

To make this distinction, the Court applies a predominant-purpose test, which examines whether the primary purpose of the communication was legal or business in nature. *Id.* at 5. In applying this test, the Court considers the nature of the advice given, the context and purpose of the communication, and the status of the attorney (whether in-house or outside counsel). *Id.* The Court also assesses whether legal and business content is severable or inextricably intertwined. *Id.* If the communication is primarily business-related, no privilege attaches. *Id.* If primarily legal, the privilege applies, and severable business portions must be produced with redaction of privileged content. *Id.* Where legal and business purposes are intertwined, the entire communication is privileged only if the legal purpose outweighs the business purpose. *Id.*

Layton's privilege designations for communications involving Mr. Colligan and construction personnel working on the Hoback Project cannot withstand scrutiny under this test. Layton's privilege log repeatedly asserts "attorney client privilege" and includes boilerplate language such as "contains Layton Legal Department Communication." *See e.g.*, Ex. 3 – 12.19.25 Priv. Log. None of Layton's labels are determinative. Mr. Colligan is not an attorney and by January 2023, he assumed the role of Project Executive. Communications sent or received by Mr. Colligan during this period plainly concern construction of the Hoback Project.

Layton's privilege logs confirm this. *See e.g.*, Ex. 3 – 12.19.25 Priv. Log. Throughout 2023 and 2024, the purported privileged communications concern topics like "PCO updates," "Schedule Impacts," "Notice of Claim," "Executive Meeting Agenda," and "Financial Risks." *Id*. These subjects reflect construction operations, not legal analysis. Even to the extent that any of the topics reference litigation, Mr. Colligan's involvement was as a business decision-maker, coordinating construction. *See Elasser*, 2022 WL 17488164 at *5 (finding no rebuttal presumption of an automatic privilege shield for in-house counsel). Other courts have held the same. *E.g.*, *Pacific Gas & Elec. Co. v. U.S.*, 69 Fed. Cl. 784, 811 (Fed. Cl. 2006).

Under the predominant-purpose test, these non-attorney communications involving Mr. Colligan cannot be claimed as privilege. Again, the primary purpose focused on construction of the Hoback Project: None of the challenged entries on Layton's privilege logs involve attorneys, nor has Layton established that these entries reflect or were made at the request of an attorney.

## II. **Mr. Colligan's Transition to Project Executive Does Not Allow for an Unreasonable Expansion of Work Product Claims.**

Layton's privilege log demonstrates a sweeping and unjustified expansion of work product claims following Mr. Colligan's transition to Project Executive in January 2023. Again, before this change, only eight non-attorney emails were withheld from the former Project Executive – Mr.

8

Munck. After replacing Mr. Munck as Project Executive, Layton designated about 449 internal emails involving Mr. Colligan as "work product." Ex. 3 – 12.19.25 Priv. Log. This abrupt shift highlights Layton's newfound privilege claims over the Project Executive's position.

The work product doctrine is narrow. *Logistiques Trans-W., Inc.*, 2009 WL 10669566, at *3. It protects materials prepared because of anticipated litigation and under the direction of counsel, not documents created in the ordinary course of business; in this case, construction. *Logistiques Trans-W., Inc.*, 2009 WL 10669566, at *3; see *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006); *U.S. v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008). As set forth *supra*, Courts within the Tenth Circuit, including this one, have articulated a two-part test that defines the limits of work product protection. *Logistiques Trans-W., Inc.*, 2009 WL 10669566, at *3; *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657–58 (D. Kan. 2007); *Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 394 (N.D. Okla. 2010). This test serves an important gatekeeping function, as it prevents parties from retroactively transforming business communications into privileged material simply by musing litigation in hindsight. *See Logistiques Trans-W., Inc.*, 2009 WL 10669566, at *3; *Bunge*, 247 F.R.D. at 658 ("Because litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the Rule to require a higher level of anticipation in order to give a reasonable scope to the immunity.").

Layton cannot establish that the subject emails were created for the purpose of anticipated litigation. As the Court has instructed, "there must be more than an anticipation of the possibility or likelihood of litigation before documents otherwise created in the ordinary course of business are considered work product." *Logistiques Trans-W., Inc.* at 2009 WL 10669566 *3. "In other words, there must be a substantial likelihood that litigation is imminent." *Id.* Layton also cannot satisfy the second prong of the test that requires it to "establish that the documents created in

'anticipation of litigation' were prepared by or under the direction of an attorney, or other individuals included in Rule 26(b)(3)(A)." *Id.*

For ease of the Court's reference, a few of the wrongfully withheld communications underscore this point. Emails dated 4.26.23 ("Pricing Options"), 6.6.23 ("Schedule Impacts"), and 6.19.2023 ("Wood Siding Samples") reflect routine construction management of the Project – cost analysis, scheduling, and material selections. Ex. 3 – 12.19.25 Priv. Log, pp. 30, 33, 34. These topics are quintessential construction project matters, not litigation strategy. Nothing in Layton's privilege log indicates that these documents were created at counsel's direction or for use in litigation preparation. *Id.* Instead, Layton relies on the conclusory assertion that Mr. Colligan's prior affiliation with the legal department cloaks his later construction communications. That premise collapses under Mr. Colligan's testimony confirming his role as Project Executive.

Layton now contends that any construction issue in 2023 with anyone on the Hoback Project retroactively amounted to imminent litigation. Indeed, Layton's privilege log shows that communications about everyday project administration—such as pricing options, schedule impacts, and material selections—were suddenly labeled "work product" despite involving no attorneys and no litigation strategy. Unless Layton was building a case rather than building the Hoback Project, its claims of privilege fail on their face. Layton offers no evidence of a triggering event, such as a formal claim or demand, that would render its anticipation of litigation objectively reasonable at the time these communications were created. Its blanket designations improperly shield non-privileged materials and undermine the work product doctrine's narrow purpose.

WHEREFORE, for the foregoing reasons, Cody Lane respectfully requests this Court grant its motion to compel production of the allegedly privileged materials or alternatively, require submission of the materials for *in-camera* review.

Dated: December 29, 2025

              /s/ Tyler J. Garrett_____
              Attorney for Plaintiff,
              Cody Lane Development Corp.

Tyler J. Garrett, WSB #6-4400 | tgarret@hkwyolaw.com
Kari A. Hartman, WSB #8-6507 | tgarret@hkwyolaw.com
HATHAWAY & KUNZ, LLP
2515 Warren Avenue, Suite 500
P.O. Box 1208
Cheyenne, WY  82003-1208
Tel: 307.634.7723
Fax: 307.534.0985

Attorney for Plaintiff
Cody Lane Development Corp.

Jeffrey B. Charkow | JBCharkow@duanemorris.com
Owen K. Newman | OKNewman@duanemorris.com
Alex W. Karasik | awkarasik@duanemorris.com
John D. Cooke | jdcooke@duanemorris.com
Chris Chasin | cjchasin@duanemorris.com
Duane Morris LLP
190 S. LaSalle Street, Ste. 3700
Chicago, IL 60603-3433
Tel: 312.499.6700
Fax: 312.499.6701

Attorneys for Plaintiff
Cody Lane Development Corp.
(Admitted pro hac vice)

**Certificate of Service**

This is to certify that on the 29th day of December, 2025, a true and correct copy of the foregoing was served via the Court's ECF/CM System as follows:

| | |
|---|---|
| Bryan S. Johansen<br>Sara M. Nielson<br>Michael T. Hoppe<br>Parr Brown Gee & Loveless<br>101 South 200 East, Ste., 700<br>Salt Lake City, UT 84111<br>bjohansen@parrbrown.com<br>snielson@parrbrown.com<br>mhoppe@parrbrown.com<br><br>*Attorney for Layton Construction Company LLC* | Giovanni Michael Ruscitti<br>Sally Piskun<br>Berg Hill Greenleaf Ruscitti LLP<br>1712 Pearl Street<br>Boulder, CO 80302<br>gmr@bhgrlaw.com<br>sp@bhgrlaw.com<br><br>*Attorneys for Greiner Electric LLC*<br>*Attorneys for RK Mechanical Inc* |
| Erika M. Nash<br>Justin Ashkhan Daraie<br>Randall B. Reed<br>Long Reimer Winegar Beppler LLP<br>PO Box 3070<br>Jackson, WY 83001<br>enash@lrw-law.com<br>jdaraie@lrw-law.com<br>rreed@lrw-law.com<br><br>*Attorneys for Layton Construction Company LLC* | Ian W. Carmen<br>Berg Hill Greenleaf Ruscitti LLP<br>1712 Pearl Street<br>Boulder, CO 80302<br>ian.carmen@bhgrlaw.com<br><br>*Attorneys for Greiner Electric LLC*<br>*Attorneys for RK Mechanical Inc* |
| L. Tyrone Holt<br>The Holt Group LLC<br>1675 Broadway, Ste., 2100<br>Denver, CO 80202<br>ty.holt@holtllc.com<br><br>*Attorney for Layton Construction Company LLC* | Daniel Kenneth Johnson<br>Lee Mann<br>Kilpatrick Townsend & Stockton LLP<br>1100 Peachtree Street, NE, Ste., 2800<br>Atlanta, GA 30309<br>dkjohnson@ktslaw.com<br>lmann@kilpatricktownsend.com<br><br>*Attorneys for Cives Corporation* |

| | |
|---|---|
| Brian Ray Lambert<br>Trenton H. Cotney<br>Roscoe Green<br>Adams and Reese LLP<br>100 N. Tampa Street, Ste., 4000<br>Tampa, FL 33602<br>brian.lambert@arlaw.com<br>trent.cotney@arlaw.com<br>roscoe.green@arlaw.com<br><br>*Attorneys for Sprayfoam d/b/a Global Roofing Group* | Isaiah I. Gross<br>Stetlting & Gross LLC<br>PO Box 3159<br>Jackson, WY 83001<br>isaiah@s-g.law<br><br>*Attorneys for Cives Corporation* |
| Billie L. M. Addleman<br>Tyson Richard Woodford<br>Hirst Applegate LLP<br>PO Box 1083<br>Cheyenne, WY 82003-1083<br>baddleman@hirstapplegate.com<br>twoodford@hirstapplegate.com<br><br>*Attorneys for Greiner Electric LLC*<br>*Attorneys for RK Mechanical Inc.* | Erica Rachel Day<br>Stuart R. Day<br>Carl Edelman<br>Williams Porter Day & Neville PC<br>PO Box 10700<br>Casper, WY 82602<br>eday@wpdn.net<br>sday@wpdn.net<br>cedelman@wpdn.net<br><br>*Attorneys for Phaze Concrete Inc.* |
| Frederick J. Hahan, III<br>Hahn Law<br>PO Box 50698<br>Idaho Falls, ID 83405<br>fjh@hahn-law.net<br><br>*Attorneys for Intermountain Erectors Inc.* | Thomas Ardell Larkin<br>Tyler J. Storti<br>Sokol Larkin Wagner & Storti LLC<br>4380 S. Macadam Avenue, Ste., 530<br>Portland, OR 97239<br>tlarkin@sokol-larkin.com<br>tstorti@sokol-larkin.com<br><br>*Attorneys for Intermountain Erectors Inc.* |

    */s/ Lori Pallak*
    Hathaway & Kunz, LLP