**FILED**

# In the United States District Court
# for the District of Wyoming

**2:10 pm, 1/6/26**
**U.S. Magistrate Judge**

CODY LANE DEVELOPMENT CORP.,

*Plaintiff*,

v.

LAYTON CONSTRUCTION COMPANY
LLC,

*Defendant*.

Case No. 24-CV-00064-KHR

---

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO STRIKE
DEFENDANT'S REBUTTAL EXPERT REPORTS [ECF 300] *& ORDER GRANTING
DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S IMPROPER FILING [ECF 367]***

This matter is before the Court on two motions: First, on Plaintiff Cody Lane Development

Corporation's ("Cody Lane") Motion to Strike certain rebuttal expert designations filed by

Defendant Layton Construction Company, LLC ("Layton"). (ECF No. 300.) Second, Defendant

Layton's Motion to Strike Cody Lane's supplemental filing in support of its Motion to Strike.

(ECF No. 367.) The Court, having carefully considered Plaintiff Cody Lane's Motion to Strike,

the Response, the Reply, then considering Defendant Layton's Motion to Strike, reviewing

pertinent expert designations, and being fully advised in the premises, FINDS:

## FACTUAL & PROCEDURAL BACKGROUND.

This case arises out of a construction contract dispute between Plaintiff Cody Lane, the

owner of a five-story, luxury-unit, multifamily living site known as the Hoback Project, and

Defendant Layton, the contractor hired by Plaintiff. Layton broke ground on the Hoback Project

in May 2021. On March 4, 2024, Cody Lane terminated the contract with Layton. And on March

18, 2024, Cody Lane sued Layton for breach of contract and for breach of implied covenant of

good faith and fair dealing. (ECF No.1.) Layton answered Cody Lane's complaint on April 10, 2024, denied all allegations against them, and filed a counterclaim alleging the same two causes of action against Cody Lane: breach of contract, and breach of the implied covenant of good faith and fair dealing while seeking nearly $42 million in damages. (ECF No. 7.)

The Court issued its initial pretrial order on September 16, 2024, and set this matter for a bench trial beginning February 23, 2026.  (ECF No. 105.) That Order was amended for the first time on October 23, 2024 (ECF No. 119), and then a second time on June 12, 2025 (ECF No. 200). The second amended order extended the expert witness designations deadlines for both parties, including rebuttal expert witness designations deadline, and extended the discovery deadline while keeping all others in effect. The parties timely filed initial expert reports on August 15, 2025, and filed rebuttal reports on the imposed deadline of September 26, 2025. (ECF Nos. 268 & 271.)

## PLAINTIFF'S MOTION TO STRIKE (ECF No. 300)

Cody Lane claims that one of the main reasons it terminated Layton from the Hoback Project was due to improper construction of the roof which, according to Plaintiff, led to multiple "stop work" notices. (ECF No. 300 at 1.) Cody Lane extends that argument to the instant issue claiming that Layton's rebuttal experts should be stricken because they address the roofing issues that are central to this litigation, and thus those reports should have been submitted in Layton's initial expert designation. *Id*. Cody Lane argues those reports are central to Layton's case-in-chief and therefore are not proper rebuttal witnesses.

Specifically, Cody Lane requests that this Court strike the following rebuttal expert reports: Kami Farahmandpour of Building Technology Consultants, Inc. ("BTC Report") as an improper rebuttal because it allegedly bolsters Layton's case-in-chief and raises new causation arguments; the report of Kenneth A. Klein of Simpson Gumpertz & Heder Inc. ("SHG Report"), and Dan

Cooley of Griz Creek Engineering ("Griz Creek Report") because they do not reference Cody Lane's initial expert reports; along with striking part of the Pasha Ameli of Ankura ("Ankura Report") because it responded to a non-retained expert and therefore should have been disclosed in Layton's initial expert designation under Rule 26(a)(1). In the alternative, Cody Lane requests this Court to permit them to file sur-rebuttal reports.

### DEFENDANT'S RESPONSE (ECF No. 322)

Layton denies the allegations that their reports are improper rebuttals and argues that Cody Lane is attempting to flip its burden of proof. Layton asserts that Cody Lane must prove the non-conforming work that it alleges, and the party with the burden of proof is required to disclose on that subject matter first to which rebuttal expert reports are filed. (ECF No.322 at 2-3.) Defendant Layton contends that it could not anticipate what non-conforming work Plaintiff Cody Lane was going to allege because Cody Lane identified "hundreds" of non-conforming work items in its Complaint. (ECF No. 322 at 5.)

### PLAINTIFF'S REPLY (ECF No. 330)

Cody Lane continued to argue that Layton's expert rebuttal reports should have been disclosed as initial reports and seeks to file sur-rebuttals in the alternative.

### PLAINTIFF'S SUPPLEMENTAL FILING (ECF No. 359)

On December 29, 2025, Plaintiff Cody Lane filed a supplement in an effort to support its Motion to Strike that is currently before the Court. The Court did not see this filing until Defendant Layton's subsequent Motion to Strike it, and did not and will not consider any of the filing's substance in ruling on Cody Lane's Motion to Strike.

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL (ECF No. 367)**

As stated above, Defendant filed a Motion to Strike Plaintiff's supplemental filing on January 5, 2026, claiming Cody Lane flouted the Federal Rules of Civil Procedure and this District's Local Rules.

## <u>RULING OF THE COURT</u>

To begin, the Court will GRANT Defendant Layton's Motion to Strike Plaintiff Cody Lane's supplemental filing. The Court finds this type of filing completely inappropriate because it was filed without leave of this Court, over two months after Cody Lane filed its Motion to Strike, and more than a month after Cody Lane's reply. Neither the Federal Rules of Civil Procedure nor the Local Rules permit this type of filing.  Again, as mentioned, the Court did not and will consider any of the material within that filing.

Now moving to Cody Lane's Motion to Strike Layton's rebuttal experts: There are two issues to resolve. First, whether Layton's rebuttal experts were timely designated. And second, whether those reports constitute true rebuttal witnesses. *See Estrada v. Bukaty*, No. 14-cv-242-SWS, 2016 WL 8316223, at *2 (D. Wyo. Aug. 19, 2016) ("*Estrada*"). Regarding the issue of timeliness, Cody Lane argues Layton's rebuttal reports are untimely because the information within the reports should have been disclosed either at the initial expert report designation deadline or even as early as initial disclosures under Federal Rule of Civil Procedure 26(a)(2).

The Court finds that the reports are timely filed because Layton filed initial expert reports on the appropriate date. Courts have found that when designated as a rebuttal expert by the deadline, it is a timely designation notwithstanding the information within the report being beyond the scope of the initial expert disclosures. *See R&O Construction Co. v. Rox Pro Int'l Grp.*, 2:09-

CV-01749-LHR-LRL, 2011 WL 2923703, at *3 (D. Nev. July 18, 2011). As such, the Court finds Layton's rebuttal reports timely.

The issue of whether the expert reports offered by Layton are true rebuttal reports requires a more extended analysis.

## LEGAL FRAMEWORK

Trial courts maintain discretion to rule on the admissibility of rebuttal testimony. *Estrada*, 2016 WL 8316223, at *1 (citations omitted). Rule 26 permits rebuttal expert witness testimony "if the evidence is intended to solely contradict or rebut evidence on the same subject matter identified by another party under Rule 26 (a)(2)(B) or (C), within 30 days after the other party's disclosure." *Id.* (citations omitted).

"Rebuttal expert reports "necessitate 'a showing of facts supporting the opposite conclusion' of those at which the opposing party's experts arrived in their responsive reports[.]" *Century Indem. Co. v. Marine Group, LLC*, 3:08-cv-1375-AC, 2015 WL 5521986, *3 (D. Or. 2015) (internal citations omitted). "Rebuttal expert reports are proper if they contradict or rebut the subject matter of the affirmative expert report." *Id.* (citations omitted). Rebuttal reports are not the platform for presenting new arguments. *Id.* (citing *1-800 Contacts, Inc. v. Lens.com, Inc.*, 755 F.Supp.2d 1151, 1167 (D. Utah 2010) (citations omitted)). And if, however, the rebuttal report's purpose "is to 'contradict an expected and anticipated portion of the other party's case-in-chief then the witness is not a rebuttal witness or anything analogous to one'." *Id.* (citations omitted)). Instead, rebuttal expert reports are limited to "new unforeseen facts brought out in the other side's case." *Id.* (quoting *In re President's Casinos, Inc.*, 2007 WL 7232932, at *2 (E.D. Mo. May 16, 2017) (citations omitted)).

1.  **The BTC Report is a Proper Rebuttal Report**.

Cody Lane's biggest complaint is regarding the BTC Report. Cody Lane acknowledges that the BTC Report is purportedly a rebuttal report against its own Wiss, Janey, Elstner Associates, Inc. Report ("WJE Report") but asserts that it should be stricken because it "focuses primarily on bolstering Layton's case-in-chief while attacking Cody Lane's," and it raised new arguments and new alternative causes based on information that Defendant Layton has had since "long before the initial expert disclosure deadline[.]" (ECF No. 300 at 3.) Cody Lane also concedes that the BTC Report targets "some of its analysis" in the WJE Report, (ECF No. 300 at 5), but still contends that it is an improper rebuttal because it "focuses entirely on challenging alleged roofing defects," which Cody Lane claims is the core of Layton's case-in-chief. *Id*.

### A.  Cody Lane's WJE Report.

In looking at the WJE Report, it details "widespread deficiencies in the installation and integration of the roof assembly components with adjacent building enclosure systems;" improper sequenced and installed vapor, air, and water barriers; inconsistent and inadequate fastening of insulation and substrate layers; discontinuities at critical transitions to adjacent construction; and water infiltration into the roof assembly leading to elevated moisture levels and microbial growth. (ECF No. 233-3 at 6, *et seq*.) In general, the overall opinion of the WJE Report was that the roof assembly does not meet the performance expectations listed in the project specifications, manufacturer guidelines, or applicable industry standards.

### B.  Layton's BTC Report.

In Layton's BTC Report, it appears to directly contradict the findings in the WJE report that "[s]everal other deficiencies in the roof were also alleged. However, [BTC's] investigation indicated those deficiencies were either not in violation of the Contract Documents or could have

been readily remedied on a localized basis." (ECF No. 271-5 at 6-7.) Section 1.4 of the BTC Report directly addresses the allegations made in the WJE report. (*See* ECF No. 271-5 at 9-11.) For example, WJE alleges that there was "improper sequences and installed vapor, air, and water barriers." (ECF No. 233-3 at 6.) The BTC report addresses the allegation of how "[i]nstallation of components of the roof assembly system were not sequenced properly, resulting in water infiltration and biological growth." (ECF No. 271-5 at 9.)

### C.  The Court's Finding Regarding BTC Report

The Court acknowledges the fine line in this case between Layton defending Cody Lane's breach of contract claims and proving their own breach of contract claim and vice-versa. Evidence may be used by both parties to pursue and defend claims. Since this matter is set for a bench trial, the concern of keeping improper information from a jury does not come into play. The Court has more flexibility to make a final determination of some of these issues at trial. The Court finds that the BTC Report is a proper rebuttal report. As shown, the BTC Report addresses the same subject matter as the WJE Report. The argument that Layton should have anticipated the alleged roofing defects to be a central point of litigation seems unreasonable to the Court.

The complaint alleges that "Layton failed to properly plan, coordinate, supervise, and execute the work." (ECF No. 1 at 6.) It further alleges faulty workmanship that fell below industry standards and the standards outlined in the contract documents. *Id*. Layton addressed these issues in their initial expert disclosures as it was on notice that these would be key issues litigated. (*See* Def.'s Expert Reports, ECF No. 235-1 & 235-2.) Additionally, Cody Lane alleged a "plethora of non-conforming work" like failure to protect wall sheathing on the exterior of the building during the winter season, the plywood-based layer on the roof out in the winter, failure to properly install roof protections and failure to allow inspections of the roof, failure to install the proper drywall,

and deficiencies in the plaster. (ECF No. 1, at 7-8, ¶ 27.) But none of those allegations required an initial expert designation. The Court, in short, agrees with Layton, that requiring it to anticipate what non-conforming issues would be central to the litigation such that it would obligate Layton to address those in their initial disclosures is unreasonable.

Cody Lane points to Layton's counterclaims as evidence that Layton should have provided expert reports regarding the roofing installation. (ECF No. 330 at 2.) But again, much like the paragraphs that they point to in the Complaint, Cody Lane failed to point to any language indicating that the roofing issues would be central to the case. Moreover, the BTC Report clearly reflects that it contradicts the subject matter of the WJE Report. The Court finds that the theories within the BTC Report are actually what expert designations are supposed to do: they "'support[] the opposite conclusion' of those at which the opposing party's experts arrived in their responsive reports[.]" *Century Indem. Co.*, 2015 WL 5521986, at *3.

Again, it would be an unreasonable interpretation to require Layton to provide an affirmative report on the roofing issue that is not their burden of proof and based upon all the allegations of non-conforming work against Layton. In short, the BTC Report is proper.

### 2. The SGH and Griz Creek Reports are Proper Rebuttals.

Cody Lane asserts that the SGH and Griz Creek Reports "do not even claim to examine or rebut any of Cody Lane's expert reports." (ECF No. 300 at 3.) Therefore, these two reports should have been submitted at the initial expert disclosure deadline and not filed – improperly – as rebuttal reports. (ECF No. 300 at 3.) The Court finds differently.

In *Carballido v. Target Corp.*, 1:19-cv-01057-REB-SKC, 2021 WL 1376997, at *1 (D. Colo. Apr. 12, 2021), the plaintiff made the same arguments that are being asserted by Cody Lane: that Layton's rebuttal experts' failure to identify which expert report they reviewed shows that

Layton's rebuttal experts should have been designated in the initial expert designations. *Id.* "However, Fed. R. Civ. P. 26(a)(2)(D)(ii) makes clear that the rebuttal expert's testimony must relate to and rebut evidence or testimony on the same *subject matter* identified by another party under Rule 26(a)(2)(B) or (C). Such evidence *is not tied to any particular witness*; it is tied to whether the party with the affirmative burden has presented evidence and/or testimony from a duly disclosed expert on the same subject matter as that which will be rebutted by the disclosed rebuttal expert." *Id.*, at *3 (emphasis in original) (quoting *Bleck v. City of Alamosa, Colo.*, No. 10-cv-03177-REB-KMT, 2012 WL 695138, at *4 (D. Colo. Mar. 5, 2012) (citations omitted)).

Layton argues that the SGH and Griz Creek reports rebut evidence identified in the WJE Report and the K2M Report. (ECF No. 322 at 5.) Cody Lane argues that these reports challenge the credibility of the Inspector of Record and are an attempt to "smuggle case-in-chief defenses into a rebuttal." (ECF No. 330 at 3 (citing *Estrada*, 2016 WL 8316223, at *2).) The Court finds that the SGH and Griz Creek rebuttal reports are proper because they address the same subject matter within the WJE Report and K2M Report.

In *Estrada*, the defendants argued that expert testimony designated by the plaintiff as rebuttal expert testimony did not constitute true rebuttal testimony because it failed to address certain data or methodology and argued that it "simply bolsters Plaintiff's previously designated experts." *Id.*, at *2. The experts at issue were medical doctors and the court found that the plaintiff's rebuttal doctor did not address "the methodologies and underlying testing" and therefore constituted improper rebuttal. *Estrada*, 2016 WL 8316223, at *2.

Here, we do not have medical doctors, or specific testing and methodology required because this is a construction contract dispute. The methodologies are generally the same when examining allegedly deficient construction. And the *Estrada* case was a jury trial, not a bench trial

like this matter. Moreover, Cody Lane's argument that the Layton's rebuttal experts are required to "tether[]" their arguments to the opposing expert is contrary to law. "It is irrelevant through which expert witness that evidence is elicited; that it actually be elicited in the course of Plaintiff's case-in-chief is the determining factor in the context of the admissibility analysis." *Carballido*, 2021 WL 1376997, at *3 (emphasis in original).

As such, the SGH and Griz Creek reports are proper rebuttals.

### 3. The Ankura Report is a Proper Rebuttal.

Cody Lane conceded in its Motion that the majority of the Ankura Report is a rebuttal; however, Cody Lane asserts a section improperly attacks a non-retained expert whose opinions should have been addressed in Layton's initial expert designation. (ECF No. 300 at 7.) Specifically, Cody Lane argues the portion of the Ankura Report that attacks the FTI report is not subject to such rebuttals because the FTI report was made back in June 2024 for the purposes of "determine[ing] the progress status/percentage completion of the work in place." (ECF No. 300 at 8 (citing ECF No. 233-5 at 4).) This makes the report a "properly formed [] component of the Project file[.]" *Id*. It was produced to Layton in February 2025, which was over six months from the expert disclosure deadline. Layton claims this report was disclosed with hundreds of other reports exchanged at that time.

Cody Lane provides little law to support this position. The *Downs* case cited is factually distinct and unpersuasive. This Court is well aware that the parties have exchanged extremely voluminous disclosures, thousands upon thousands of documents. To say that a party must pick out non-expert opinions that may or may not be designated by the opposing party for trial and file rebuttal reports to those as initial expert designations would be absurd. As Layton points out, Rule 26(a)(2)(D) makes no distinction between retained or non-retained experts for rebuttal purposes.

The Ankura Report does rebut evidence of the designated FTI Report and is therefore a proper rebuttal expert report.

    **4.  The Court Finds No Prejudice nor Sur-Rebuttals Are Not Appropriate**.

    Since the Court finds these were appropriate rebuttal designations that were timely filed, the Court need not engage in an analysis regarding prejudice. Likewise, Cody Lane's request to file sur-rebuttal designations is denied.

**CONCLUSION & ORDER**

    In sum, the Court finds that Plaintiff Cody Lane's supplemental filing is inappropriate and will not be considered; and Defendant Layton's rebuttal experts are proper by way of the foregoing reasoning. The information in the rebuttal reports will be allowed at trial strictly for rebuttal purposes. Cody Lane may raise these issues again as evidence develops at the bench trial. The Court may evaluate, at that time, whether the information being presented is rebuttal to information already provided at trial. And finally, the Court finds that sur-rebuttals are not appropriate.

    **IT IS THEREFORE ORDERED** that Plaintiff Cody Lane's Motion to Strike is **DENIED WITHOUT PREJUDICE**.

    **IT IS FURTHER ORDERED** that Plaintiff Cody Lane's Request to File Sur-Rebuttals and Defendant Layton's Request to File Sur-Rebuttals are **DENIED**.

    **AND IT IS FINALLY ORDERED** that Defendant Layton's Motion to Strike Cody Lane's supplemental filing is **GRANTED**.

**DATED**: January 6, 2026.

                                     *Stephanie Hambrick*
                                     HON. STEPHANIE A. HAMBRICK
                                     United States Magistrate Judge