

United States District Court

For The District of Wyoming

| | |
|---|---|
| CODY LANE DEVELOPMENT, CORP., <br><br> Plaintiff/Counter Defendant, <br><br> v. <br><br> LAYTON CONSTRUCTION CO., LLC, <br><br> Defendant/Counter Claimant, <br><br> and <br><br> Related Third Party Claims. | Civil No. 24-CV-64-R |

**ORDER RULING ON CODY LANE DEVELOPMENT CORPORATION'S
MOTION FOR RECONSIDERATION [348]**

This litigation stems from a contract dispute arising from the construction of the Hoback Club project in Teton Village, Wyoming (the "Project"). [ECF No. 1, at 2]. In October 2025, Cody Lane Development Corporation filed its Motion to Compel Discovery related to Layton Construction Company, LLC's alleged noncompliance with the parties' agreement governing production of Electronically Stored Information ("ESI Protocol"). [ECF No. 302]; [ECF No. 132]. After the issue was fully briefed, Magistrate Judge Hambrick denied Cody Lane's Motion. [ECF No. 335]. The current matter before the Court is Cody Lane's Motion for Reconsideration of the Magistrate Judge's Denial of its Motion to Compel Discovery. [ECF No. 348]; *see* [ECF No. 335]; [ECF No. 302]. After careful

consideration of the arguments made in the underlying determination, the Motion, and the Response, the Court finds the request does not demonstrate the Magistrate Judge's determination was clearly erroneous or contrary to law and the Motion is denied.

## BACKGROUND

The Project is a luxury ski-in/ski-out residential complex located in Jackson Hole Mountain Resort. [ECF No. 1, at 2]. When completed it will consist of 25 individual residences, along with common areas, private dining, and health and fitness facilities. *Id*. The original estimated price to construct the Project was more than $235 million. *Id*. at 4. Cody Lane is the developer of the Project. [ECF No. 7-1, at 1]. The Contract consists of the AIA Document A133-2009 Standard Form Agreement between Owner and Contractor, the AIA Document A201-2017 General Conditions of the Contract for Construction, other drawings and specifications, and included four amendments. [ECF No. 336, at 2]; [ECF No. 355, at 4 n.2].

In May 2021, Cody Lane entered into the AIA Document A133 Agreement with Layton to serve as the Construction Manager/Constructor of the Project. [ECF No. 1, at 3]. Substantial completion of the Project was to occur by February 23, 2024. That date was later extended to April 20, 2024, under Amendment 4. [ECF No. 1, at 4]; *see* [ECF No. 7-1, at 549–51]. In March 2024, Cody Lane terminated Layton and excluded it from the Project. [ECF No. 1, at 13]. On March 18, 2024, Cody Lane filed this lawsuit alleging Layton breached the Contract and its duty of good faith and fair dealing. Cody Lane alleges Layton failed to properly plan, coordinate, supervise, and execute its work on the Project; failed to comply with the Project's construction schedule; and failed to process payment

applications promptly, which delayed payments to subcontractors. *Id*. at 6–12. Cody Lane's claimed damages include the cost to complete the Project, the cost to repair or replace work that is deficient, liquidated damages, and costs and attorneys' fees.

Layton denied the Complaint's allegations and filed a counterclaim alleging it was wrongfully terminated and asserting claims for (1) breach of contract, and (2) breach of the implied covenant of good faith and fair dealing against Cody Lane. [ECF No. 7, at 18–20]. These alleged breaches include Cody Lane failing to deliver complete and constructible plans; failing to approve legitimate changes in the work; failing to make complete and timely payments; failing to approve compliant work; failing to answer Requests for Information ("RFIs") in a timely manner; failing to timely respond to submittal packages; and inappropriately changing the design of the Project. *Id*. at 17–18. Layton's claimed damages include payment for completed work allegedly withheld by Cody Lane, and the profit Layton was deprived of because of its termination. *Id*. at 20. Cody Lane denies the allegations of Layton's counterclaim. [ECF No. 27].

In its role as Construction Manager, Layton engaged no fewer than 47 subcontractors and suppliers on the Project. At Cody Lane's election, Layton's contracts with the subcontractors and suppliers were assigned to Cody Lane shortly after termination. Many of these 47 subcontractors and suppliers have information relevant to the claims and defenses in this lawsuit. Layton has also filed third-party complaints against various subcontractors on the Project, seeking indemnity and defense for Cody Lane's claims or, in the alternative, damages. The subcontractors Layton has sued are: Sprayfoam Southwest, Inc. (roofing contractor); Greiner Electric, LLC (electrical contractor); Cives Corp. (steel

framing contractor); RK Mechanical, LLC (mechanical contractor); and Phaze Concrete, Inc. (concrete contractor). [ECF Nos. 36, 37, 38, 39, 42]. The third-party defendants deny any liability for the claims against them. [ECF Nos. 74, 79, 87, 89, 93].

## CURRENT MOTION

The parties to this litigation agreed on a protocol "for identification and production of Electronically Stored Information" in January 2025. [ECF No. 132]. "The purpose of the Protocol is to facilitate the conduct of discovery involving ESI, to avoid unnecessary duplicative productions and unnecessary cost and expense, and to promote the resolution of potential disputes regarding the discovery of ESI." *Id*. at 1. The ESI Protocol included a table with the relevant fields to be completed by the parties and provided with ESI production. *Id*. at 6–10. Within the table, example information was provided to demonstrate the kind of information to be included under each field. Under the field "custodian" the corresponding example within the table reads "John Doe." *Id*. at 6.

On October 22, 2025, the parties participated in an informal discovery call with Magistrate Judge Hambrick. [ECF No. 298]. During the call, Cody Lane claims Layton admitted for the first time its documents were collected from a single general repository—not individual custodians. [ECF No. 348, at 2]. The next day, Cody Lane filed a Motion to Compel Discovery. [ECF No. 302]. The Motion challenged Layton's failure to produce metadata allegedly required under the ESI Protocol. *Id*.; [ECF No. 132]. Relying on the example field provided in the protocol table, Cody Lane claimed the parties were required to identify specific custodians for each document and Layton violated this requirement by

primarily including itself as the custodian or omitting the custodial information entirely. [ECF No. 302].

Cody Lane claimed the omitted custodial metadata establishes foundation for documents; identifies key witnesses; verifies testimony; assists with deposition strategy; and helps to determine the opposing parties' compliance with production. *Id*. at 3–4. Thereafter, Layton filed its Response to Cody Lane's Motion to Compel which included allegations the Motion was untimely and attached an affidavit from an IT employee explaining Layton's ESI production process. [ECF Nos. 323, 323-2]. Cody Lane filed its Reply and raised the novel issue of inadequate search terms used by Layton in ESI production. [ECF No. 328]. Judge Hambrick allowed Layton to file a sur-reply to address the narrow issue of inadequate search terms alleged by Cody Lane. [ECF No. 331]; [ECF No. 332].

Judge Hambrick then entered an Order Granting in Part and Denying in Part Cody Lane's Motion to Compel Discovery. [ECF No. 335]. Within the Order, Judge Hambrick held the term "all custodians" was not defined in the ESI Protocol and Layton was not required to list every individual custodian. The Order also noted the protocol did not specify how the parties were to collect the ESI. *Id*. at 6–8. Judge Hambrick stated there was apparently no discussion between the parties related to search terms. She contended the ESI Protocol provided them the option to establish a search term process, and the parties should have done so at the start of discovery. *Id*. at 8 (citing ECF No. 132, at 2). Judge Hambrick reasoned Cody Lane's delay in conferring about the application of the ESI Protocol and in bringing the Motion to Compel undercut any findings the requested

5

discovery was crucial, or its omission was prejudicial. *Id*. Judge Hambrick granted the Motion in part, requiring Layton to fill out the "custodian" field rather than leaving it blank or marking the information as unavailable.

Cody Lane now motions this Court to reconsider the Magistrate Judge's discovery determination. [ECF No. 348]. It argues the Order did not account for other factors contributing to its perceived delay, including numerous rolling productions from Layton, repeated technical issues, issues with scheduling the informal discovery conference, and the fact Layton never disclosed its collection process to Cody Lane. *Id*. at 3. Cody Lane also argues Judge Hambrick failed to address the express terms of the ESI Protocol, and did not acknowledge the potential prejudice resulting from Layton's noncompliance. Cody Lane concludes, "[t]he Order appears to confuse the importance of metadata, search terms, and custodial information; as such, the Order must be reversed." *Id*. at 4. Layton opposes Cody Lane's Motion for Reconsideration and argues Cody Lane fails to identify what in the Order is clearly erroneous or contrary to law. [ECF No. 359, at 2]. Layton maintains the ESI Protocol does not contain a limitation about the necessity of an individual custodian and Cody Lane has failed to demonstrate it has suffered any prejudice. *Id*.

## **RELEVANT LAW**

Magistrate judges are afforded broad discretion in resolving discovery disputes. *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1300 (10th Cir. 1999). Under Local Rule 74.1, a party can seek reconsideration of a magistrate judge's order provided the request designates the order objected to and the basis for the objection. U.S.D.C.L.R. 74.1; 28 U.S.C.A. § 636(b)(1); Fed. R. Civ. P. 72(a). "Review of the magistrate judge's

ruling is required by the district court when a party timely files written objections to that ruling, and the district court must defer to the magistrate judge's ruling unless it is clearly erroneous or contrary to law." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997).

Under the clearly erroneous standard, "the reviewing court [must] affirm unless it . . . is left with the definite and firm conviction that a mistake has been committed." *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) (quotations omitted) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir.1988)); *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). "A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Doe v. Hardwick*, No. 3:24-CV-489-BJD-MCR, 2025 WL 2021355, at *2 (M.D. Fla. July 18, 2025) (quotations omitted) (quoting *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007)).

"[P]roviding this Court with new arguments and evidence is not appropriate on a motion to reconsider. Rather, the Court will review the information before the Magistrate Judge at the time [she] denied Plaintiff's request." *Mestas v. Town of Evansville*, No. 17-CV-17-F, 2017 WL 6551391, at *2 (D. Wyo. Aug. 25, 2017) (alteration added). "Evidence is 'new' if it was not before the decisionmaker when the previous determination was made." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (citation omitted). "Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (citations omitted).

**RULING OF THE COURT**

The Court affirms Magistrate Judge Hambrick's Order Denying Cody Lane's Motion to Compel. [ECF No. 335]. As stated, Judge Hambrick denied Cody Lane's Motion challenging Layton's compliance with the stipulated ESI Protocol. [ECF No. 335]; [ECF No. 302]. The Court will review Cody Lane's Motion to Compel by examining the applicable standard, Cody Lane's claims of incomplete disclosures, and the parties' conflicting interpretations of the ESI Protocol.

## I. *Motion to Compel*

A motion to compel is an enforcement mechanism used to ensure the production of discovery when the responding party has produced evasive or incomplete answers and disclosures. Fed. R. Civ. P. 37(a). A motion to compel must be based on more than mere speculation additional documents exist. *See*, *e.g.*, *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) (finding "if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end."); *Kendle v. Whig Enters., LLC*, No. 2:15-CV-1295, 2016 WL 898569, at *4 (S.D. Ohio Mar. 9, 2016); *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 161 (N.D. Ill. 2023); *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 421 (N.D. Tex. 2021).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009). In making this determination, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the

parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Magistrate Judge's Order noted, "[g]enerally, discovery does not involve a 'deep dive' into how the other party collected, reviewed and processed their production and this type of discovery is disfavored. To allow an investigation into a parties' document production, the requesting party should provide 'specific and tangible evidence of a material discovery failure.'" [ECF No. 335, at 4] (citing *LKQ Corp.*, 345 F.R.D. at 156–57).

Here, Cody Lane claimed Layton's ESI Protocol violations were (1) failing to name individual custodians, and (2) failing to use different search terms. [ECF No. 302]; [ECF No. 328]. The Court found Layton's process for producing the requested discovery was reasonable, and all the discovery issues raised by Cody Lane could have been defined with specificity under the ESI Protocol and raised several months before the Motion to Compel was filed. [ECF No. 335]. With the issue framed accordingly, the Court first turns to Cody Lane's allegations of incomplete disclosures underlying its Motion to Compel. [ECF No. 302].

### A. Incomplete Disclosures

To grant a motion to compel related to outstanding discovery the court must find there have been evasive or incomplete answers and disclosures requiring resolution. Fed. R. Civ. P. 37(a); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 630 (D. Colo. 2007) ("As the Advisory Committee Notes make clear, 'Rule 26(g) imposed an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent

9

with the spirit and purposes of Rules 26 through 37.'"). The central issue here is whether Cody Lane presented any evidence demonstrating discovery was incomplete. Whether the discovery is incomplete hinges on interpretation of the ESI Protocol. The Court now turns to Cody Lane's contentions suggesting the disclosures were incomplete, including its interpretation of the protocol.

1. *ESI Protocol Interpretation*

The parties have fundamentally different interpretations of the ESI Protocol. Under Wyoming law, a court order is construed in the same manner as a legally enforceable contract. *Van Vlack v. Van Vlack*, 2023 WY 104, ¶ 20, 537 P.3d 751, 757 (Wyo. 2023). "An interpretation of a contract begins with an attempt to ascertain the parties' intent as evidenced by the specific language of the agreement." *Id.* (citing *Hofhine v. Hofhine*, 2014 WY 86, ¶ 9, 330 P.3d 242, 245 (Wyo. 2014)).

When interpreting a contract, the Court views it "as a whole, reading each provision in light of all the others to find their plain meaning. . . . [presuming] each provision . . . has a purpose, and we avoid interpreting a contract so as to find inconsistent provisions or so as to render any provision meaningless." *Star Valley Ranch Ass'n v. Daley*, 2014 WY 116, ¶ 23, 334 P.3d 1207, 1213 (Wyo. 2014) (alteration added) (citing *Claman v. Popp*, 2012 WY 92, ¶ 12, 279 P.3d 1003, 1013 (Wyo. 2012)). Similarly, "[c]ourts should consider the circumstances surrounding execution of the agreement to determine the parties' intention, even in reviewing unambiguous contracts." *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 22, 226 P.3d 889, 905 (Wyo. 2010) (citing *Mullinnix LLC v. HKB Royalty Trust*, 2006 WY 14, ¶ 6, 126 P.3d 909, 915 (Wyo. 2006)).

In reviewing the Magistrate Judge's interpretation of the ESI Protocol and ultimate denial of the Motion to Compel, this Court reviews those findings considering the relevancy and proportionality requirements inherent to discovery. "[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citations and quotations omitted). "For example, a party's right to obtain discovery may be constrained where the court determines that the requesting party [] had ample opportunity by discovery to obtain the information sought, or determines that the burden or expense of the proposed discovery outweighs its likely benefit." *Cache La Poudre Feeds*, *LLC*, 244 F.R.D. at 619–20 (citing Fed. R. Civ. P. 26(b)(2)(C)).

Here, Cody Lane relies on the examples provided in the ESI Protocol being the hypothetical names of individuals—listing a custodian as "John Doe" in the table of discovery information—to support its interpretation custodians cannot be entities. [ECF No. 302, at 3]. Layton points to a provision of the ESI Protocol stating, "parties may agree to a procedure by which document custodians and search terms are employed." [ECF No. 359, at 5] (quoting ECF No. 132, at 2). Layton interprets this provision, and the entirety of the protocol, to mean entities (including parties) may serve as document custodians. *Id*. Layton contends its method of pulling ESI from a central repository through the efforts of IT employees is the most efficient process for production and makes Layton the proper custodian. *Id*. at 6–7.

Judge Hambrick reviewed Cody Lane's interpretation requiring Layton to list every individual having custody of the document and determined it was unreasonable. In contrast,

11

the Order found Layton's disclosed process for ESI production—using an IT team to collect documents from a general repository—was objectively reasonable and not did not violate the ESI Protocol. [ECF No. 335, at 6–7]. In making this finding, the Order noted the agreed upon ESI Protocol did not specify how information was to be collected. *Id*. at 7. The Order likewise found the term "all custodians" is not defined within the ESI Protocol. *Id*. at 6. The Order further determined Cody Lane failed to demonstrate a deficiency in the production process, and merely "provided generalized claims that 'there must be more [ESI].'" *Id*. (alteration added).

Interpreting the provisions argued by the parties in light of the ESI Protocol as a whole, Judge Hambrick's determination was neither clearly erroneous nor contrary to law. The Order correctly noted the term "all custodians" and the process for collecting ESI were not expressly defined within the protocol. [ECF No. 335, at 6–7]; [ECF No. 132]. Additionally, when viewing these provisions considering the surrounding circumstances, the litigation at issue is a complex matter in which both parties maintain claims of breach of contract and breach of the implied covenant of good faith and fair dealing against the other. [ECF No. 1]; [ECF No. 7].

As previously stated, the Contract is made up of many documents, drawings, specifications, and amendments, and the contractual relationship between Cody Lane and Layton lasted roughly three years and involved no fewer than 47 subcontractors and suppliers. [ECF No. 336, at 2]; [ECF No. 355, at 4]; [ECF No. 1, at 13]. The nature of the claims themselves, in hand with the complexity of the underlying facts, has foreseeably produced volumes of documents and communications during discovery. The local rules,

federal rules, and express language of the ESI Protocol require the parties to avoid including duplicative documentation in their discovery. [ECF No. 132, at 1]. The complexity of the case objectively necessitates the parties have an efficient means for producing ESI. Approaching individual custodians for ESI and screening these findings for duplicates would likely create unnecessary delay, cost, and inefficiency compared to pulling ESI from a central repository.

This Court also notes at the time the ESI Protocol was executed the trial was not yet bifurcated. *See* [ECF No. 189]; [ECF No. 132]. Until the bifurcation, it was anticipated many sub-contractors would participate in the entirety of the trial. *See* [ECF Nos. 36, 37, 38, 39, 42] (including third-party complaints filed by Layton against several sub-contractors). In the stipulated ESI Protocol proposed to the Court, representatives for Cody Lane, Layton, Phaze Concrete, Inc., Greiner Electric, LLC, RK Mechanical, LLC, Cives Corporation, and Sprayfoam Southwest, Inc. all included signatures approving the protocol as to form. [ECF No. 130-1, at 16–17]. Acknowledgment of the protocol by several sub-contractors emphasizes the reasonableness of Judge Hambrick's interpretation allowing Layton to designate itself as the "custodian" in ESI productions. Because there were many parties involved at the time of the protocol's execution, custodial identification by party name may have been an especially reasonable interpretation of the protocol given the number of parties, and the facts "custodian" is undefined, and no express procedures were otherwise agreed upon.

Overall, the Court finds Judge Hambrick's interpretation of the ESI Protocol does not leave the Court with the distinct impression a mistake has been made and was supported

by the plain text of the document, the conduct of the parties, and the circumstances surrounding its execution. Thus, Judge Hambrick's interpretation and subsequent denial of Cody Lane's Motion was neither clearly erroneous nor contrary to law. The Court next addresses Cody Lane's claims of prejudice.

### 2. *Prejudice*

Cody Lane claims the omitted custodial metadata establishes foundation for documents; identifies key witnesses; verifies testimony; assists with deposition strategy; and helps to determine the opposing parties' compliance with production. [ECF No. 302, at 3–4]. Cody Lane argues if Layton had identified individual custodians, then Cody Lane would have identified the discovery deficiencies in a timely manner. [ECF No. 348, at 9]. It concluded, "Layton's incomplete production severely prejudices Cody Lane. The inadequate search terms mean that Cody has already had to conduct depositions with an unknown number of relevant emails missing." [ECF No. 302, at 6].

Judge Hambrick found Cody Lane only provided generalized, conclusory allegations about Layton's ESI discovery being incomplete. [ECF No. 335, at 7]. She acknowledged Layton's first ESI production was in January 2025, yet Cody Lane first mentioned production issues about custodians in August 2025. *Id*. The Order did not find the Motion untimely but noted "the fact that the issue was not raised for many months undercuts Cody Lane's argument that the information is crucial. If it had been crucial, Cody Lane could have approached Layton regarding the issues many months earlier." [ECF No. 335, at 7].

This Court finds Judge Hambrick's findings related to prejudice were reasonable. A motion to compel must be supported by more than mere speculation. *See* Fed. R. Civ. P. 37(a). Cody Lane's claims of incomplete discovery essentially hinge on the basic search terms employed by Layton. *See* [ECF No. 302, at 6]. Cody Lane does not clarify how identification of specific, individual custodians would have helped it identify these perceived deficiencies earlier, or how providing custodial information would be helpful in preparing its case, considering sender and recipient information were included in all ESI produced. [ECF No. 359, at 9]. Cody Lane also does not offer any evidence substantiating its suspicions ESI remains outstanding. Overall, the Court finds Judge Hambrick's Order Denying Cody Lane's Motion to Compel was neither clearly erroneous nor contrary to law. Thus, the Court affirms Judge Hambrick's holding. [ECF No. 335].

## CONCLUSION

**THEREFORE, IT IS ORDERED** Cody Lane Development Corporation's Motion for Reconsideration [ECF No. 348] is **DENIED**, and Judge Hambrick's Order [ECF No. 335] is **AFFIRMED**.

Dated this 15th day of January, 2026.

Kelly H. Rankin
U.S. District Judge

.