Randall B. Reed (Wyo. Bar No. 5-2863)
Erika M. Nash (Wyo. Bar No. 6-3867)
Justin Daraie (Wyo. Bar No. 7-4690)
LONG REIMER WINEGAR LLP
2120 Carey Avenue, Suite 300
Cheyenne, Wyoming 82001
307-635-0710
rreed@lrw-law.com
jdaraie@lrw-law.com
enash@lrw-law.com

Michael T. Hoppe (pro hac vice)
Bryan S. Johansen (pro hac vice)
Sara Meg Nielsen (pro hac vice)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
mhoppe@parrbrown.com
bjohansen@parrbrown.com
snielson@parrbrown.com

L. Tyrone Holt (pro hac vice)
THE HOLT GROUP, LLC
1675 Broadway, Suite 2100
Denver, Colorado 80202
tholt@holtllc.com

*Attorneys for Defendant Layton Construction Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CODY LANE DEVELOPMENT CORP., | Case No. 2:24-cv-00064-KHR |
| Plaintiff / Counterclaim Defendant, | |
| v. | The Honorable Kelly H. Rankin |
| LAYTON CONSTRUCTION COMPANY, LLC, | |
| Defendant / Counterclaim Plaintiff. | |
| | |
| Layton Construction Co., LLC, | |
| Third-Party Plaintiff, | |
| v. | |
| Sprayfoam Southwest, Inc. dba Global Roofing Group, et al. | |
| Third-Party Defendants. | |

## DEFENDANT LAYTON CONSTRUCTION COMPANY, LLC'S RESPONSE TO PLAINTIFF CODY LANE DEVELOPMENT CORP.'S MOTION TO COMPEL PRODUCTION OF LAYTON CONSTRUCTION'S CLAIMED PRIVILEGED COMMUNICATIONS AND SUPPLEMENT

7044539.2

Defendant, Counterclaim Plaintiff and Third-Party Plaintiff Layton Construction Co., LLC ("Layton"), through counsel, responds to the motion (ECF No. 358), supplemented on January 13, 2025 (ECF No. 372) (together, the "Motion"), filed by Plaintiff and Counterclaim Defendant Cody Lane Development Corp. ("Cody Lane"), which seeks to compel production of privileged communications with Michael A. Colligan, who was Vice President of Contracts and Projects Oversight and assigned to Layton's legal department.

Pursuant to the Court's January 12, 2026 order (ECF No. 370), Layton has contemporaneously submitted the withheld and redacted communications to the Court for *in camera* review to wyojudgesah@uscourts.gov.

## INTRODUCTION

Cody Lane seeks to compel production of 450 communications[1] from Michael A. Colligan, a legal paraprofessional who was initially assigned to Layton's legal department and later became a project executive. Counsel for Layton have conducted multiple good faith reviews of these communications, both in response to Cody Lane's initial "meet and confer" letter and the present motion. These reviews demonstrate two failings of Cody Lane's position.

*First*, many of these communications, including the first document identified in Cody Lane's supplement (No. 520265), were already produced following the parties' prior meet-and-confer attempts. (*See* ECF No. 371-1.) Layton has attached a chart as **Exhibit 1**, which demonstrates which documents have already been produced in redacted or unredacted form or are

---

[1] Cody Lane initially sought to compel production of an unspecified 355 communications. It has increased that number and now seeks to compel production of 450 communications. Of these, 3 were originally withheld as attorney-client communications, 99 were originally withheld as work product, and 348 were originally withheld as both attorney-client communications and work product. (ECF No. 372.) Of these documents, 35 have previously been produced in unredacted form and are no longer subject to a claim of privilege by Layton;, 141 were produced in redacted form, and 2 are from another project and are wholly unrelated to this litigation. These last two documents were marked as "irrelevant" on Layton's Privilege Log.

Memorandum Brief in Response to Plaintiff Cody Lane Development Corp.'s Motion to Compel Production of Layton Construction's Claimed Privileged Communications and Supplement
Case No. 24-CV-00064-KHR
Page 2 of 12

7044539.2

duplicates and identifies them by Bates number.[2] There is no reason to compel the production of duplicative materials.

*Second*, review by Layton's counsel confirms its good faith belief that the remaining withheld communications were made for the predominant purpose of obtaining legal advice and services or contain attorney work product. Cody Lane objects to non-disclosure based solely on (1) the fact that Mr. Colligan is not an attorney and (2) Cody Lane's speculation about their contents. However, Mr. Colligan made the withheld communications as an agent of Layton's attorneys to obtain and provide legal advice. As explained in the declarations of Jeffrey D. Stevens and Mr. Colligan attached as **Exhibits 2** and **3**, respectively, while at times operating in both capacities in the later part of the Hoback Club project, Mr. Colligan's services more often involved coordination between both inside and outside legal counsel and other principals of Layton. As argued below and explained in the chart attached as Exhibit 1, these communications are privileged. The Court's *in camera* review will confirm that disclosure is improper.

## LEGAL STANDARD

Discovery falls within the Court's discretion. *See*, *e.g.*, *Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors*, 705 F. Supp. 3d 1316, 1322–23 (D. Wyo. 2023). "Broad discovery is not unlimited . . . and a court has considerable discretion to balance the rights of both the plaintiff and defendant." *Id.*

---

[2] Documents that have not been produced have no Bates number and are identified only by identification number within the system used by Layton's counsel. Such numbering follows the format used in Cody Lane's supplement.

Memorandum Brief in Response to Plaintiff Cody Lane Development Corp.'s Motion to Compel Production of
Layton Construction's Claimed Privileged Communications and Supplement
Case No. 24-CV-00064-KHR
Page 3 of 12

7044539.2

## ARGUMENT

1.    **The predominant purpose of Mr. Colligan's withheld communications was to assist Layton in obtaining legal advice and representation from its attorneys, which protects such communications from disclosure under the attorney-client privilege.**

The law governing attorney-client privilege is well-settled:

> In diversity cases, Rule 501 of the Federal Rules of Evidence provides that state law governs claims of privilege. Therefore, Wyoming law controls the issue. Under Wyoming law, the party seeking to establish attorney-client privilege has the burden of establishing its applicability to the material in question. Blanket assertions of privilege are not sufficient to meet this burden.

*Elsasser v. Devon Energy Prod. Co., L.P.*, No. 21-CV-00182-NDF, 2022 WL 17488164, at *3 (D. Wyo. Dec. 7, 2022) (citing *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998)).

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1243–44 (D. Wyo. 2016) (quoting *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169–70 (2011)) (cleaned up). To qualify for protection, a party must prove four elements: "(1) a communication, (2) between privileged persons, (3) made in confidence, and (4) for the purpose of seeking, obtaining, or providing legal assistance." *Id.* at 1244. "Privileged persons include attorneys, clients, and 'any of their agents that help facilitate attorney-client communications or legal representation.'" *Id.* (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 345 (3d Cir. 2007)). The Court evaluates privilege on a case-by-case basis, examining whether communications were made "at the direction of corporate superiors in order to secure legal advice from counsel" and

Memorandum Brief in Response to Plaintiff Cody Lane Development Corp.'s Motion to Compel Production of
Layton Construction's Claimed Privileged Communications and Supplement
Case No. 24-CV-00064-KHR
Page 4 of 12

7044539.2

"concerned matters within the scope of the employees' corporate duties." *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981).

The Motion objects to application of the attorney-client privilege to Mr. Colligan's communications because he "was the Project Executive during that time on the Project" and "is not an attorney …" (ECF No. 358, at 6.) From this, Cody Lane concludes that Mr. Colligan's communications were "nothing more than routine project management, not legal advice." (*Id.*) This argument is speculative, places undue reliance on Mr. Colligan's title, and ignores Mr. Colligan's specific paraprofessional role in assisting various counsel in providing legal advice and assistance to Layton.

Although Mr. Colligan is not a licensed attorney, at all relevant times he was acting at the direction of and in consultation with attorneys in Layton's legal department, including Layton's former Chief Legal Counsel Paul Drecksel, and current Chief Legal Counsel, Jeffrey D. Stevens, to seek and obtain confidential legal advice regarding the Hoback Club project. (Ex. 2, Stevens Decl., ¶¶ 4–6; Ex. 3, Colligan Decl., ¶¶ 4–6.) At the beginning of the Hoback Club project, Mr. Colligan initially acted as Vice President of Contracts and Project Oversight, a role directly under and reporting to Mr. Stevens, where he facilitated confidential communications and advice between Layton's counsel and relevant principals of Layton.[3] (Ex. 2, Colligan Decl. ¶¶ 3–12.) Such communications to facilitate legal advice and representation continued when Mr. Colligan was assigned as project executive from early 2023 through Layton's termination on March 11, 2024. As stated by Mr. Colligan in his declaration:

> 16.     Starting in early 2023, *in addition to my responsibilities in the Legal Department*, I was also assigned a project management role

---

[3] Layton disclosed this information about Mr. Colligan in its privilege log. (ECF No. 358, Ex. 3, at 125.)

Memorandum Brief in Response to Plaintiff Cody Lane Development Corp.'s Motion to Compel Production of Layton Construction's Claimed Privileged Communications and Supplement
Case No. 24-CV-00064-KHR
Page 5 of 12

7044539.2

as the Project Executive on the Hoback Project through Layton's termination on March 11, 2024. I continued to have responsibilities on the Hoback and other projects, as a representative of the Legal Department. Although some of my communications in my role as the Hoback Project Executive were for business guidance only, other communications were based on my work and agency with Layton's legal counsel. On behalf of the Legal Department, I was directly involved in the negotiations with Cody Lane and other parties, subcontractors, and non-parties, regarding its efforts to both try and avoid litigation and to try and prepare for litigation, when it appeared that litigation was the direction the project was headed.

17.    I participated in mediation proceedings relating to the Hoback Project. The communications in which I was involved communications were based on my work and agency with Layton's legal counsel and were also protected as "mediation communications."

(*Id.* ¶¶ 16–17 (emphasis added).) Mr. Colligan's withheld communications as project executive specifically involved those necessary to provide legal advice to Layton. (*Id.* ¶ 18.) Such communications are protected from disclosure under the attorney-client privilege. *See Hedquist*, 215 F. Supp. 3d at 1244.

Nothing in Mr. Colligan's hearing testimony or deposition testimony undermines this conclusion. True, Mr. Colligan is not an attorney. (ECF No. 358, Ex. 1, at 54:5–6.) But that is not the correct legal standard; the question is whether Mr. Colligan was an agent who "help[ed] facilitate attorney-client communications or legal representation." *Hedquist*, 215 F. Supp. 3d at 1244. Mr. Colligan testified in his deposition to that exact fact. Mr. Colligan's initial work on the Hoback Club project was in the legal department, where he negotiated contracts, managed disputes, and dealt with lien threats. (ECF No. 358, Ex. 2, at 17:8–18:1, 18:17–23:17.) In the later part of the project, early 2023, Mr. Colligan's duties included responsibilities as an executive on the project (*Id.* at 23:8–17, 25:16–26:15) and held that position through the date of Layton's

Memorandum Brief in Response to Plaintiff Cody Lane Development Corp.'s Motion to Compel Production of
Layton Construction's Claimed Privileged Communications and Supplement
Case No. 24-CV-00064-KHR
Page 6 of 12

7044539.2

termination on March 11, 2024 (ECF No. 358, Ex. 1, at 27:24–28:2). However, Mr. Colligan continued to discharge duties in his paraprofessional capacity, as an agent of Layton's Chief Legal Officer. As project executive, his work expanded, and he oversaw project financials, pay applications, and subcontractor management. (ECF No. 358, Ex. 1, at 71:1–13.) Notwithstanding Cody Lane's appeal to incredulity, his position involved both construction and legal communications, only the latter of which have been withheld. The fact that Mr. Colligan oversaw the construction manager and at times "interacted with the entire team on the project" (ECF No. 358, Ex. 1, at 29:12–25) changes nothing regarding the character of these communications.

Cody Lane references the communications of Mr. Colligan's project executive predecessor, Bill Munck, to argue Layton's privilege claim is unfounded. This argument is speculative and fails to address the fact that privilege must be judged on a case-by-case basis. *See Upjohn Co.*, 449 U.S. at 394. Additionally, Mr. Munch was never assigned as an agent of Layton's Legal Department and never had any legal paraprofessional responsibilities. Compared to Mr. Munck's communications, significantly more of Mr. Colligan's communications in that role were used by Layton for the purpose of obtaining legal advice. This is understandable based on Mr. Colligan's 14 years of experience in Layton's legal department and the fact that an increasing number of legal communications were necessary as increasing difficulties with the project created a substantial likelihood of litigation. (Ex. 2, Colligan Decl. ¶¶ 3.)

Finally, Cody Lane objects to the specificity of Layton's privilege log, arguing that categories like "strategy, "contract interpretation," and "matters in dispute" do not satisfy the requirements of Rule 26(b)(5). (ECF No. 358, at 7.) That rule requires a party to "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or

Memorandum Brief in Response to Plaintiff Cody Lane Development Corp.'s Motion to Compel Production of Layton Construction's Claimed Privileged Communications and Supplement
Case No. 24-CV-00064-KHR
Page 7 of 12

7044539.2

protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Layton's privilege log provides sufficient, truthful detail to make that assessment. It did not simply make a blanket assertion that communications were privileged. Rather, it explained Mr. Colligan's role in assisting attorneys in providing legal advice and services to Layton. (ECF No. 358, Ex. 3, at 125.) "Generally, a privilege log is adequate if it identifies with particularity the documents withheld, . . . their date of creation, author, title or caption, addressee and . . . recipient, and general nature or purpose for creation." *Zander v. Craig Hosp.*, 743 F. Supp. 2d 1225, 1231–32 (D. Colo. 2010). Moreover, the privilege log has been further supplemented with Mr. Colligan's testimony, the chart attached as Exhibit 1, and the declarations attached as Exhibits 2 and 3. Such supplemental evidence is proper "to establish that each element of the asserted privilege has been met." *Id.* at 1232. Finally, it is unduly burdensome to require more specific information about each withheld item where "voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." *Consumer Fin. Prot. Bureau v. Carnes*, No. 23-CV-2151-DDC-TJJ, 2024 WL 1195565, at *7 (D. Kan. Mar. 20, 2024) (citing Fed. R. Civ. P. 26(b)(5) advisory committee note to 1993 amendment). Doing so would create an unnecessary hardship on Layton, especially when the descriptions provided as sufficient to meet the applicable requirements of the Federal and Local Rules of Civil Procedure. Nonetheless, Layton's counsel and their staff have dedicated significant time to reviewing the withheld and redacted communications in a good faith effort to comply with the discovery rules.

Memorandum Brief in Response to Plaintiff Cody Lane Development Corp.'s Motion to Compel Production of
Layton Construction's Claimed Privileged Communications and Supplement
Case No. 24-CV-00064-KHR
Page 8 of 12

7044539.2

2.    **Many of Mr. Colligan's communications are further protected by the work product doctrine.**

Layton has designated many of Mr. Colligan's communications as privileged under the work product doctrine.[4] Documents are protected as work product when prepared under the supervision of an attorney in anticipation of trial. *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007). The Court must examine the motivating purpose of the document and whether the threat of litigation was "real and imminent." *Id.*

Cody Lane speculates that the withheld materials cannot satisfy this standard and points to 2023 emails involving "Pricing Options," "Schedule Impacts," and "Wood Siding Samples." (ECF No. 358, at 11.) This argument overlooks the fact that these subjects involved disputed legal issues and competing legal claims within this lawsuit and that such communications involving project administration may also be made under the supervision of attorneys in anticipation of litigation. Where documents contained both privileged and unprivileged communications, they were produced in redacted form.[5]

It is unsurprising that work product would arise in communications over a construction project beset by difficulties, claims and resulting disputes, many of which arose at the beginning of the Project in 2021 and continued unabated through the date of Layton's termination on March 4, 2024. This is even more true of Mr. Colligan's post-termination communications. After that time, Layton was no longer overseeing the Hoback Club project, and the withheld communications were made in direct consultation with Layton's lawyers for the express purpose of a breach of

---

[4] Most of the communications for which Cody Lane seeks to compel production qualify for the attorney-client privilege. Only 99 relevant communications were withheld solely on work product grounds. (ECF No. 372.)
[5] For example, Cody Lane objects to the privilege of document #502251, an April 26, 2023 email with "Pricing Options" in the subject line. This email was produced in redacted form as LCC-WYUSDC-01665639.

Memorandum Brief in Response to Plaintiff Cody Lane Development Corp.'s Motion to Compel Production of
Layton Construction's Claimed Privileged Communications and Supplement
Case No. 24-CV-00064-KHR
Page 9 of 12
7044539.2

contract lawsuit and resultant litigation strategy. Such communications are protected from disclosure under the work product doctrine and have been properly withheld or redacted.

## CONCLUSION

The Court's *in camera* review will show that the 450 communications either (1) were already produced or (2) are privileged and were properly redacted or withheld. The Court should deny Cody Lane's Motion.

Dated:   January 20, 2026.

/s/ Randall B. Reed
Randall B. Reed, Wyo. Bar No. 5-2863
Erika M. Nash, Wyo. Bar No. 6-3867
Justin Daraie, Wyo. Bar No.7-4690
**LONG REIMER WINEGAR LLP**
2120 Carey Avenue, Suite 300
P.O. Box 87
Cheyenne, Wyoming 82003
(307) 635-0710
(307) 635-0413 fax
rreed@lrw-law.com
enash@lrw-law.com
jdaraie@lrw-law.com

L. Tyrone Holt (pro hac vice)
**THE HOLT GROUP, LLC**
1675 Broadway, Suite 2100
Denver, Colorado 80202
Ty.holt@holtllc.com

Bryan S. Johansen (pro hac vice)
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
*bjohansen@parrbrown.com*

*Attorneys for Layton Construction Company, LLC*

Memorandum Brief in Response to Plaintiff Cody Lane Development Corp.'s Motion to Compel Production of Layton Construction's Claimed Privileged Communications and Supplement
Case No. 24-CV-00064-KHR
Page 10 of 12

7044539.2

## CERTIFICATE OF SERVICE

I certify that I electronically served the foregoing **Defendant Layton Construction Company, LLC's Memorandum Brief in Response to Plaintiff Cody Lane Development Corp.'s Motion to Compel Production of Layton Construction's Claimed Privileged Communications and Supplement** via ECF/PACER this January 20, 2026 to the following:

| | |
|---|---|
| Tyler J. Garrett<br>Kari Hartman<br>HATHAWAY & KUNZ, LLP<br>2515 Warren Avenue, Suite 500<br>P.O. Box 1208<br>Cheyenne, Wyoming 82003-1208<br>Email: tgarrett@hkwyolaw.com<br>khartman@hkwyolaw.com<br><br>*Counsel for Cody Lane Development Corp.* | Jeff B. Charkow<br>Owen K. Newman<br>Chris J. Chasin<br>Alex W. Karasik<br>John D. Cooke<br>DUANE MORRIS, LLP<br>190 South LaSalle Street, Suite 3700<br>Chicago, Illinois 60603<br>Email: jbcharkow@duanemorris.com<br>oknewman@duanemorris.com<br>cjchasin@duanemorris.com<br>awkarasik@duanemorris.com<br>jdcooke@duancmorris.com<br><br>*Counsel for Cody Lane Development Corp.* |
| Lee Mann<br>Daniel Johnson<br>KILPATRICK TOWNSEND &<br>STOCKTON LLP<br>1100 Peachtree Street NE | Suite 2800 |<br>Atlanta, Georgia 30309-4528<br>Email: LMann@ktslaw.com<br>dkjohnson@ktslaw.com<br><br>*Counsel for Cives Corporation* | Giovanni Ruscitti<br>Sally Piskun<br>Ian Carmen<br>BERG HILL GREENLEAF RUSCITTI<br>1525 17th Street<br>Denver, Colorado 80202<br>Email: gmr@bhgrlaw.com<br>sally.piskun@bhgrlaw.com<br>ian.carmen@bhgrlaw.com<br><br>*Counsel for Greiner Electric, LLC and RK Mechanical, Inc.* |
| Isaiah R. Gross<br>STELTING & GROSS, LLC<br>172 Center Street, Suite 200<br>Jackson, Wyoming 83001<br>Email: isaiah@s-g.law | Billie LM Addleman<br>Tyson Woodford<br>HIRST APPLEGATE<br>1720 Carey Ave Ste 400<br>Cheyenne, Wyoming 82001<br>Email: baddleman@hirstapplegate.com |

| | |
|---|---|
| *Counsel for Cives Corporation* | twoodford@hirstapplegate.com<br><br>*Counsel for RK Mechanical, LLC and Greiner Electric, LLC* |
| Stuart R. Day<br>Erica R. Day<br>Carl Edelman<br>WILLIAMS, PORTER, DAY & NEVILLE<br>159 North Wolcott, Suite 400<br>P.O. Box 10700<br>Casper, Wyoming 82601<br>Email: sday@wpdn.net<br>      eday@wpdn.net<br>      cedelmen@wpdn.net<br><br>*Counsel for Phaze Concrete, Inc.* | Trent Cotney<br>Brian Lambert<br>Roscoe Green<br>ADAMS AND REESE LLP<br>100 North Tampa Street, Suite 4000<br>Tampa, Florida 33602<br>Email: Trent.Cotney@arlaw.com<br>      Brian.Lambert@arlaw.com<br>      Roscoe.Green@arlaw.com<br><br>*Counsel for SprayFoam Southwest, Inc. dba Global Roofing Group* |
| Thomas A. Larkin<br>Tyler J. Storti<br>Sokol & Larkin<br>4380 S. Macadam Ave., Suite 530<br>Portland, Oregon 97239<br>tlarkin@sokol-larkin.com<br>tstorti@sokol-larkin.com<br><br>*Counsel for Intermountain Erectors, Inc.* | Frederick J. Hahn<br>Samuel K. Hahn<br>HAHN LAW OFFICE<br>421 A Street, Ste. D<br>PO Box 50698<br>Idaho Falls, Idaho 83405<br>Email: fjh@hahn-law.net<br>      skh@hahn-law.net<br><br>*Counsel for Intermountain Erectors, Inc.* |

*/s/ Randall B. Reed*
Long Reimer Winegar LLP