# EXHIBIT 1

Tyler J. Garrett, WSB # 6-4400
Kari A. Hartman WSB # 8-6507
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY 82003-1208
(307) 634-7723
(307) 634-0985 (fax)
tgarrett@hkwyolaw.com
khartman@hkwyolaw.com

Jeffrey B. Charkow
Owen K. Newman
Duane Morris LLP
190 South LaSalle Street, Ste. 3700
Chicago, IL 60603
(312) 499-6701
jbcharkow@duanemorris.com
oknewman@duanemorris.com

ATTORNEYS FOR PLAINTIFF
CODY LANE DEVELOPMENT CORP.

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

| | |
|---|---|
| CODY LANE DEVELOPMENT CORP., <br><br> Plaintiff, <br> v. <br><br> LAYTON CONSTRUCTION COMPANY, LLC, <br><br> Defendant, Counter-Claimant, and Third-Party Plaintiff. | Case No. 24-CV-00064-KHR |
| Related Third Party Claims. | |

**[PROPOSED] PLAINTIFF'S CONSOLIDATED MOTIONS IN LIMINE**

DM3\22310715.2

Plaintiff Cody Lane Development Corp. ("Cody Lane"), by and through its attorneys Hathaway & Kuntz, LLP, and Duane Morris LLP, hereby submits this Motion in Limine and, for the reasons set forth below, respectfully requests that this Court: (I) limit Layton Construction Company, LCC's ("Layton") use of duplicative roofing expert testimony; (II) bar the introduction of evidence and arguments about claims waived by Amendment 4 to Cody Lane's contract with Layton (the "Contract"); (III) Allow evidence of post termination facts that relate to the issues identified for termination as of March 4, 2024; and (IV) permit evidence and argument at trial about Layton's pre-termination Contract breaches.

Per Local Rule 7.1(b)(1)(A), Cody Lane conferred with opposing counsel in a good faith effort to resolve these issues prior to filing this Motion but was unable to resolve the issues and was advised that Layton opposes this Motion. A proposed order is attached as **Exhibit A**.

## I.     The Court Should Exclude Duplicative Expert Testimony

Layton has identified 7 retained experts, each of whom purports to offer testimony regarding the propriety of the construction of the roof for the Project. In addition, Layton has disclosed 2 employees to provide additional opinion testimony related to the roof. Specifically, Layton designated its retained and non-retained experts on August 15, 2025. (ECF No. 235 at 1-4). These include:

- Dean Vlahos, who opines on alleged roof design issues and their impact on the roof's installation. (ECF No. 235-6 at 18).
- Terry Wright who opines on the impact of the roof's snowmelt system design (ECF No. 235-4 at 18); and
- Tom Caruso, a general contractor, civil engineer, and structural engineer whose rebuttal report discusses roof failures and their impact on the Project schedule (ECF No. 271-1 at 8-9).

Layton also designated the following 4 non-retained experts (Layton employees, who will testimony to their opinions regarding the roof construction):

1

- Michael Colligan, a mechanical engineer who has experience working for a general contractor, to testify regarding Layton's work on this Project; (ECF No. 235 at 4-5)
- Cooper Darling, a construction manager set to testify regarding Layton's performance of work in accordance with industry standards and in relation to alleged design issues (*Id*. at 5-6);
- Preston Robertson, a construction manager set to testify regarding the Project's schedule (*Id*. at 7-8); and
- Brandon Howell another construction manager also set to testify regarding the Project's schedule (*Id*. at 6-7).

Critically, and even though Layton brings an affirmative claim for wrongful termination, it designated additional "rebuttal" experts on September 26, 2025 (ECF No. 271 at 4-6), including:

- Pasha Ameli, whose report reviews conclusions regarding defective roofing work. (ECF No. 271-4 at 44-45)
- Kami Farahmandpour, whose report specifically addresses roof design issues and roof construction deficiencies. (ECF No. 271-5 at 5-6);
- Kenneth Klein, whose report reviews construction defects and opines on whether the roof could be repaired instead of replaced. (ECF No. 271-6 at 4-5); and
- Dan Cooley, whose "rebuttal" testimony relates to code enforcement, and is not truly a rebuttal to any of Cody Lane's experts. (ECF No. 271-7)

Cody Lane moved to strike the Ameli, Klein, Cooley, and Farahmandpour reports. (ECF No. 300). That motion was denied without prejudice. (ECF No. 368). Notably, the Magistrate found that most of these experts were proper rebuttal of Cody Lane's roofing expert, WJE. *Id.* at 6-10. This is simply not true for Mr. Cooley, who is a code official, and requires testimony about the nature of the defects from others. To the extent that Layton alleges the code enforcement was improper, that is not the subject of any of Owner's expert testimony

In total, Layton has designated eleven retained and non-retained experts, including "rebuttal" witnesses, that all speak to roofing issues on this Project. If this Motion is not granted these duplicative experts will unfairly bolster Layton's position on one of the most significant issues in the case, and Cody Lane will need to expend extra time rebutting them. This time loss would be especially prejudicial, given Cody Lane has only six days to present its case, and twelve days for the entire trial, while Layton has consistently opposed Cody Lane's request for additional

2

time. (ECF No. 363 at 9); (ECF No. 360). This is particularly problematic here where Layton's direct testimony will not use court time as it will come in through witness statements, and Owner will be forced to use valuable time to cross examine multiple witnesses with overlapping and cumulative testimony.

Any probative value of this duplicative testimony is substantially outweighed by these issues. Therefore, this Court should limit Layton's duplicative expert testimony per Local Rule 26.1(e)(2).

Pursuant to Local Rule 26.1(e)(2), "parties are limited to the designation of one expert witness to testify for each particular field of expertise, absent a showing that complex issues necessitate expert witnesses with narrow, specialized areas of expertise within a larger general field." To determine whether testimony is cumulative, the District of Wyoming has considered the following factors: "(1) each expert's qualifications and areas of expertise; (2) the analysis offered by each expert; and (3) the particular subject matter of each expert's testimony." *Swank v. Zimmer, Inc.,* 2004 WL 5499523 at 7 (D. Wyo. Jan. 7, 2004). Additionally, Rule 403 of the Federal Rules of Evidence allows the court to exclude evidence if its probative value is substantially outweighed by a danger of needlessly presenting cumulative evidence, undue delay, and wasting time. *See also Faber v. City of Rawlins*, 2008 WL 11411454 at 2 (D. Wyo. May 9, 2008) (analyzing duplicative expert testimony under Rule 403).

This Court has consistently barred duplicative expert testimony concerning a single field." *In re Rich Global, LLC*, 2018 WL 11536423 at 2 (D. Wyo. Nov. 21, 2018) (citations omitted); *Morgan v. Baker Hughes Inc.*, 2016 WL 9450455 at 6 (D. Wyo. Aug. 9, 2016); *Rutstein v. Cindy's Trucking of Illinois, Inc.*, 2012 WL 8813611 at 5 (D. Wyo. Aug. 8, 2012); *Buchan v. Wilson*, 2013

WL 12086249 at 3 (D. Wyo. Jan. 2, 2013)). Applying the *Swank* factors listed above to the circumstance in this case demonstrates the overlapping and duplicative nature of Layton's experts.

First, Layton's experts are largely engineers with general contracting backgrounds, including Caruso, Wright, Colligan, Ameli, Farahmandpour, Klein, and Cooley. (ECF No. 235 at 1-5); (ECF No. 271 at 4-6). Notably, Wright, Ameli, Farahmandpour, Cooley, and Klein are all licensed professional engineers. (ECF No. 271 at 3-6). Caruso, Klein, and Ameli are experienced in civil engineering. *Id.* at 2-5. Caruso and Wright are both structural engineers with general contractor experience. *Id.* at 2-3. Colligan, Darling, Robertson, and Howell, also have general contracting backgrounds. *Id.* at 7-10. They clearly overlap in terms of qualifications and expertise.

For the second and third factors, at least some of each expert's analysis and particular subject matter involves Layton's work on the Project's roof. Caruso's rebuttal report discusses roof failures and their impact on the Project schedule. (ECF No. 271-1 at 8-9). Wright opines on the impact of the roof's snowmelt system design. (ECF No. 235-4 at 18). Vlahos's report speaks to roof design and its effect on the installation of the roof system and weatherproof of the structure. (ECF No. 235-6 at 18). Farahmandpour addresses purported roof design issues and construction deficiencies. (ECF No. 271-5 at 5-6). Klein contests roof violations issued by SAFEbuilt and argues the roof could have been repaired instead of replaced. (ECF No. 271-6 at 4-5). Ameli reviews conclusions regarding defective roofing work. (ECF No. 271-4 at 44-45). And, although not referenced in his report, the Magistrate's Order on Cody Lane's motion to strike held that Cooley, along with Ameli, Farahmandpour, and Klein was a proper rebuttal expert to WJE's roofing report. (ECF No. 368). So these experts either constitute rebuttal on roofing issues and are thus unduly duplicative, or they are improper rebuttal experts not addressing roofing issues.

4

As for the non-retained experts, Colligan was designated to testify regarding the appropriateness of Layton's services on this Project; Darling, was designated to testify regarding Layton's performance of work in accordance with industry standards and purported design issues; Robertson, was designated to testify regarding the schedule on the Project; and Howell was also designated to testify regarding issues on the schedule for the Project. (ECF No. 235 at 5-8). Because the roofing issues impacted the schedule, constitute part of Layton's performance of work on the Project, and involve arguments regarding design, these individuals will also likely testify as experts regarding the roof.

Any argument by Layton that these individuals have unique backgrounds such that their duplicative testimony on roofing should be permitted, would be unpersuasive. *Swank*, 2004 WL 5499523 at 7; *see also Murray v. American Colloid Company,* 2022 WL 1132145 at 6 (D. Wyo. Mar. 11, 2022) (finding that experts provided overlapping testimony despite unique individualized backgrounds in the safety industry). *See Energy Drilling, LLC v. Pacific Energy & Mining Company, LLC*, 2016 WL 3509329 at 6 (D. Wyo. Apr. 1, 2016). To justify its use of duplicative experts, the burden would be on Layton to specifically identify the complexities of the case and the way each expert's specific qualifications, training, education, and testimony would assist the factfinder. *Redfield v. Campbell County Health*, 2021 WL 2941559 at 3 (D. Wyo. Mar. 1, 2021). Layton cannot meet this burden.

Allowing the Court, as trier of fact to hear the same or similar testimony from multiple experts, would prejudice Cody Lane by which unfairly bolstering Layton's positions on roofing, and effectively requires Cody Lane to use its valuable time to cross examine multiple witnesses, while Layton does not burn its allocated time. Layton has failed to show how each expert's specialized areas are needed to understand the construction of the roof. The prejudice is further

exacerbated in this case, as the liability phase is limited to twelve days and Cody Lane only has been allocated one half of the time.

It is reasonable for Layton to select one expert to testify regarding roofing and the Court to strike cumulative expert testimony regarding the same matter *See MacDonald-Evoy v. Tubach*, 2002 WL 34439744 at 3 (D. Wyo. Apr. 25, 2002); *See also Combs v. Peabody Energy Corporation*, 2008 WL 11248796 at 2 (D. Wyo. Jan. 14, 2008).

## II.     The Court Should Exclude Evidence of Claims Waived by Amendment 4

Effective April 14, 2023, the Parties agreed to amend the Contract with Amendment 4, which effectively reset the Project clock. (ECF No. 336-3). Cody Lane agreed to provide increased in time and money to complete the Project by a date certain, and in exchange Layton waived any and all "claims for extended/additional general conditions"[1] and "time related claims for delay and delay impact claims and associated time related costs" as of Amendment 4's effective date. (ECF No. 336-3 at §§ 5-6). Layton also agreed to indemnify and defend Cody Lane from any such claims brought by Layton's subcontractors. *Id.*  The Court considered the import of this Amendment in connection with ruling on Layton's Motion for Summary Judgment.

Despite these clear waiver provisions, Layton attempts to use waived, pre-Amendment 4 conduct to bolster its claims that Cody Lane failed to provide complete design documents, made inappropriate and improper changes to the Project design, and failed to timely address requests for information. (ECF No. 7 at ¶¶ 22(a), (e), (g); 27(a), (e), (g)). Layton was aware of the status of the design documents at the time it signed Amendment 4, and evidence of conduct for which Layton has waived its claims is irrelevant to Layton's causes of action. Fed. R. Evid. 401(b). To the extent

---

[1] With the sole exception of "specific 'Expanded General Conditions Staff' claims asserted in Contractor PCO-0596 dated 03/31/2023" not at issue in this Motion. (ECF No. 336-3 at § 5).

Layton can establish some tangential relevance, it would still be substantially outweighed by the danger of unfair prejudice, confusion, wasted time and needlessly cumulative proceedings, and the Court should exclude it at trial. Fed. R. Evid. 403.

Layton's use of waived, pre-Amendment 4 conduct has been especially pervasive in support of its claim that Cody Lane breached the Contract by issuing an incomplete set of construction documents. To support that argument, Layton repeatedly refers to the overall number of requests for information ("RFI's") and Construction Change Directives ("CCDs") across the whole length of the Project, rather than solely those from after Amendment 4. This artificially inflates the apparent degree of change and ambiguity associated with the Project designs during the period relevant to Layton's claims, which begins after Amendment 4.

Layton includes these references in, among other pleadings, its counterclaims, where it refers exclusively to the number of RFIs and CCDs throughout the Project, as well as to the state of the Project plans at the outset of the Project (ECF No. 7 at ¶¶ 11-12, 15); Layton's sections of the Parties' joint case management plan, where it emphasizes that the complexity of the case is based on the overall number of RFIs across the Project (ECF No. 95 at 17); and its motion for summary judgment, where it cites to the overall number of Project CCDs and RFIs to argue that the Court should find the Project designs were deficient as a matter of law. (ECF No. 336 at 6-7).

Layton's experts likewise rely heavily on pre-Amendment 4 conduct to support their conclusions. Like Layton itself in the pleadings discussed above, Layton's design expert, Dean Vlahos repeatedly cites to the overall number of CCDs and RFIs across the Project, (including pre-Amendment 4 RFIs and CCDs) to support his conclusion that the Project's plans were deficient. See e.g. (ECF No. 235-6 at 11-13, 22-24). But although merely failing to differentiate pre-Amendment 4 and post-Amendment 4 conduct is itself unfairly prejudicial and confusing, Vlahos

goes further. Large swathes of his report consist of critiques of design documents that substantially predate and were superseded by the time of Amendment 4. See e.g (ECF No. 235-6 at 6-8, 13-15, 17-18). In other cases, Vlahos simply inserts pre-Amendment 4 CCDs or RFIs into his analysis to bolster his claims (See e.g. ECF No. 235-6 at 12, 17-18, 22). For example, he cites to CCDs 136, 171, 205-207, 212, 233, 243, 273, 403, 417, 422 and 436, all pre-Amendment 4, as causing construction delays in two critical units. (ECF No. 235-6 at 12).

Layton's engineering expert, Terry Wright, relies on much of the same impermissible evidence and arguments as Vlahos. He too uses the overall number of CCDs and/or RFIs on the Project to support his argument that the Project's plans were deficient, even using tables and diagrams to visually overstate the number of RFIs and CCDs at issue. See e.g. (ECF No. 235-4 at 7-10, 12-18, 25-26, 37). Even Wright's discussion of the "latter part of the Project" begins in August 2022, more than six months prior to the effective date of Amendment 4. (ECF No. 235-4 at 8, 10). Like Vlahos, Wright also devotes substantial portions of his report to analyzing alleged issues that entirely predated Amendment 4, (ECF No. 235-4 at 10 (describing pre-Amendment 4 design revisions); 17-18 (discussing "open design issues" "[a]s of 25 October 2022"); 20-21 (listing complaints about the Project architect from fall of 2022); 30-32 (discussing alleged failure to timely certify pre-Amendment 4 pay applications)). As a result, of the 35 substantive pages of Wright's report, (ECF No. 235-4 at 4-39) more than half consist of references to, and analysis of, pre-Amendment 4 conduct, all of which are either irrelevant or at least substantially prejudicial.

These issues also extend to Layton's interrogatory responses. Cody Lane's Interrogatory No. 1 requests the basis of Layton's breach of contract claim that Cody Lane failed to deliver a "complete, properly coordinated and constructable design[.]" (Layton's Resp. to Interrog., attached as **Exhibit B**, at 5). Layton's response relies on the overall quantity of RFIs and CCDs issued on

the Project, not those issued post-Amendment 4. (Ex. B, Layton's Resp. to Interrog. at 6-7, 9). It also cites directly to a compilation of both pre- and post-Amendment 4 documents like RFIs, CCDs, submittals, and claims, indicating Layton's intent to rely on them to support its arguments. (Ex.s A-J to Layton's Resp. to Interrog., attached as **Exhibit C**).[2]

Whether the Project designs were deficient prior to the effective date of Amendment 4 is not "of consequence in determining the action" because Layton has already waived any inefficiency or delay claims associated with any such deficiencies. Fed. R. Evid. 401(b). Assuming arguendo that this evidence had some tangential relevance, it would be substantially outweighed by the danger of unfair prejudice, confusion, wasted time and needlessly cumulative proceedings. Fed. R. Evid. 403. This is a sizeable case, and the Parties have limited time to present a large quantity of evidence. If Layton gets to argue, for example, that pre-Amendment 4 RFIs or CCDs (for which it waived inefficiency and delay claims), meant that pre-Amendment 4 plans/designs (for which it waived general conditions claims) were inadequate, Cody Lane will have no choice but to spend its valuable time responding to the substance of the pre-Amendment 4 conduct, which under the facts here is prejudicial, as it has only limited time to present its case. Rather than detract from trial by forcing the Parties to argue this evidentiary dispute whenever such issues are raised,

---

[2] Cody Lane also requested that Layton provide information about the other grounds for its breach of contract claim, including in interrogatory no. 9 (requesting the basis for Layton's claims that Cody Lane "inappropriately and improperly terminat[ed] the Contract"), and interrogatory no. 12, (asking Layton to identify the delays and disruptions to the Project Layton claims were caused by Cody Lane). (Ex. B, Layton's Resp. to Interrog. at 16, 19). But Layton's responses to both of these interrogatories, along with interrogatories no. 2, 3, 5, 8 and 14 directly incorporate its response to interrogatory no. 1, and its reliance on pre-Amendment 4 RFIs and CCDs, often with little additional substance. (Ex. B, Layton's Resp. to Interrog. at 9-17, 19-22). And Layton's responses to interrogatories 3-9 and 12 directly reference the overbroad exhibits used to support its response to interrogatory 1, which include claims waived by Amendment 4. (Ex.B, Layton's Resp. to Interrog. at 10-17, 19-21 (Citing Ex. C, Ex.s A-J to Layton's Rep. to Interrog.)).

9

the Court should grant this Motion to "aid the parties in formulating trial strategy" in advance. *Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1130 (10th Cir. 2016) (citations omitted).

### III.     The Court Should Permit the Use of After-Acquired Evidence

In granting Layton's Motion to Bifurcate, the Court stated that "information and defects" discovered after Layton's termination were not relevant to whether there was a material breach. (ECF No. 189 at 12). But the Court's statement overstates the scope of any restriction on evidence used to prove Layton's breach of contract. "Any extant reasons supporting a default termination are sufficient to sustain a default, even if not known or discovered until after the decision to terminate for default is made." *Mega Const. Co. v. United States*, 29 Fed. Cl. 396, 422 (1993) (citations omitted).

While Cody Lane does not intend to interject any new issue or grounds for termination into evidence, there is information that it learned after March 4, 2024 which supports the grounds identified in its March 4, 2024 notice of termination, including the extent of the defects in the roof, Layton's failure to coordinate or adequately sequence work or otherwise manage scope. (ECF No. 336-18 at 2-3). Such after-acquired evidence is relevant to the question of whether Cody Lane's stated grounds for termination existed in fact, as Cody Lane believed and alleged at time of termination, and should therefore be permitted at trial.

Perhaps the best example of this principle relates to evidence of roofing defects. As of the date of termination, Cody Lane alleged that Layton had failed to stagger certain roofing insulation panels as required by the Project's plans and had rendered the roof susceptible to water intrusion and damage. Cody Lane's subsequent inspection confirmed extensive damage, and that the inspection reports showing deficient construction were accurate and that the deficient construction permitted water to enter the assembly organic growth to impact the roofing materials. (ECF No.

10

233-3). When Cody Lane was eventually forced to remove and replace the roof in response to these and other defects, it also discovered for the first time that Layton had improperly constructed the roof's eaves.

Although not revealed until after termination, this evidence is further proof that Cody Lane's allegations about Layton's defective roofing construction were accurate and that it was justified in terminating Layton. And although Layton contests the factual validity of these findings, its own experts rely almost entirely on after-acquired evidence from post-termination roofing inspections in arguing that the roof construction was not defective. See e.g. (ECF No. 271-5; 271-6).

There are other examples. After termination, it was revealed that Layton had failed to order "Portella doors" needed for the Project. The failure to do so caused further Project delays. Layton also took down certain hoists and cranes prior to termination. But afterwards, Cody Lane learned that the hoists and cranes were still needed and would have to be re-installed at increased cost. Likewise, only after termination did Cody Lane discover that it would need to modify the exterior scaffolding at added costs because Layton had failed to install building brackets prior to erecting the scaffolding. After termination, Cody Lane learned of other instances of mismanagement, including Layton's failure to determine whether the wooden garage ceilings would be handled by the exterior or interior wood subcontractor, or the fact that Layton's kitchen supplier provided the wrong kitchen hoods, requiring Cody Lane to procure alternate control panels to interface with them.

Each of these is an instance of Layton's failure to "provide Work that conformed to the requirements of the Contract Documents and to generally recognized standards of performance[,]" "furnish efficient construction administration, management services and supervision[,]" and/or

11

"perform the Work in an expeditious and economical manner consistent with the Owner's interests" as cited in Cody Lane's Notice of Termination. (ECF No. 336-18 at 3). Even though Cody Lane did not learn of some of the specific manifestations of these issues until after termination, they are still relevant to whether termination was justified.

The caselaw clearly allows Cody Lane to support a termination for default with evidence not known to it at the time of termination. *Mega Const. Co.*, 29 Fed. Cl. 396, 422 (citations omitted). Courts have "consistently approved default terminations" under this rationale, even where the original grounds for termination were inadequate. *Dep't of Transportation v. Eagle Peak Rock & Paving, Inc.*, 69 F.4th 1367, 1376 (Fed. Cir. 2023). In fact, the availability of after-acquired evidence to defeat wrongful termination claims is "Supreme Court precedent[.]" *Johnson v. USANA Health Scis., Inc.*, 632 F. Supp. 3d 1245, 1265 (D. Utah 2022) (citing *College Point Boat Corp. v. United States*, 267 U.S. 12, 16, 45 S. Ct. 199, 69 L. Ed. 490 (1925)).

Although after-acquired evidence is most often used in government contractor suits, it "has since been adopted by many other jurisdictions and extended to apply more broadly to all manner of contracts." *Id*. For example, after-acquired evidence can establish a complete bar to liability for wrongful termination of employment. See e.g. *Gassman v. Evangelical Lutheran Good Samaritan Soc., Inc.*, 22 Kan. App. 2d 632, 640–44, 921 P.2d 224, 230–32 (1996); *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 549–50 (Colo. 1997). See also (Cody Lane Resp. to Mot. To Bifurcate, ECF No. 184, at 9 (citing *Scranton v. Woodhouse*, 463 P.3d 785, 794 (Wyo. 2020); *McKennon v. Nashville Banner Pubg. Co.*, 513 U.S. 352, 361-62 (1995))).

As a result, after-acquired evidence regarding Layton's breaches, including that cited above, is plainly relevant. Since it can be used to support a termination for default, it tends to make it more or less probable that Cody Lane was entitled to terminate Layton. Fed. R. Evid. 401. Rather

12

than bar all such evidence outright or adjudicate it on a case-by case basis at trial, the Court should streamline proceedings by granting the instant Motion.

### IV. The Court Should Permit the Introduction of Evidence of Layton's Pre-Termination Breaches

In ruling on the motion for bifurcation, the Court suggested that if Layton proves that Cody Lane "wrongfully" terminated the Contract, Owner would not be entitled to damages against Layton for conduct that took place prior to the termination. (ECF no. 189 at 11). Layton's conduct before Cody Lane terminated Layton is squarely at issue in this case because the Contract explicitly preserves Cody Lane's right to sue based on such conduct and Cody Lane has brought breach-of-contract claims against Layton based on such conduct.

Cody Lane recognizes that the damages phase of this case has been deferred to a future trial (ECF No. 189) and that evidence regarding Layton's breaches which would survive a finding of wrongful termination would predominantly be at issue in a subsequent damages trial. However, Cody Lane files this Motion to seek clarification moving forward about the proper scope of evidence in each phase of the case, and to ensure that no evidence of liability is mistakenly excluded based on assumptions about issues will be at stake in a subsequent trial on damages.

Under Section 13.9 of the Contract's General Conditions, "[a]ll obligations created by the Contract survive suspension or termination of the Contract except those obligations relating to continuing performance of terminated Work and payment for terminated Work." (ECF No. 336-2 at 41). Layton's contractual obligations, along with any claim for breach of those obligations, survived its termination. The survival clause in Section 13.9 expressly preserves Cody Lane's right to assert claims for breach of contract based on Layton's pre-termination conduct. Cody Lane has asserted such claims in this lawsuit and is advancing them to trial.

13

Layton's allegations that Cody Lane materially breached the Contract by wrongfully terminating Layton, even if true, would not undermine the relevance of these pre-termination claims, because such a material breach "excuses future performance, not past performance." *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 437 (Tex. 2017) (citing Restatement (Second) of Contracts § 237, cmt. e (1981); *Allied Cap. Partners, LP v. Proceed Tech. Res., Inc.*, 313 S.W.3d 460, 465 (Tex. App. 2010)). This is "a basic principle of Anglo-American law" which "has been followed throughout the United States… for hundreds of years…" *Marino v. Brighton Gardens of Mountainside*, 697 F. Supp. 3d 224, 234–35 (D.N.J. 2023) (collecting cases). For example, in *Sitlington v. Fulton*, 281 F.2d 552, 554–56 (10th Cir. 1960), the sellers of property failed to timely deliver possession, and the purchasers subsequently repudiated the parties' agreement, albeit wrongfully. The Tenth Circuit ruled that the purchasers' wrongful repudiation was no bar to their breach-of-contract claim: "the purchasers had a right of action for damages for the delay in performance of the contract by sellers, and the sellers had a cause of action for damages for breach of the contract by the purchasers." *Id*. at 556. Similarly here, Cody Lane has breach-of-contract claims against Layton based on Layton's pre-termination conduct, and those claims would retain viability even if Cody Lane's termination of the Contact were wrongful.

Other courts have applied this principle in the wrongful termination context. For example, in *Hoffman v. McLaughlin Corp.*, the Rhode Island Supreme Court held that the lower court had improperly excluded evidence of prior breaches in a wrongful termination suit, stating that:

> whether [A] properly terminated the consulting agreement was an entirely separate and distinct issue from that of whether [B] had breached the consulting agreement by failing to perform as required. Regardless of whether [A] properly terminated the consulting agreement… [A] was not thereby prohibited from proceeding on his counterclaim against [B]…'The exercise of a reserved power of termination will usually have prospective operation only; it will discharge both parties from their contractual duty to perform promises that are still wholly executory, but will not discharge the duty to make reparation for breaches that have already occurred.'

14

703 A.2d 1107, 1112 (R.I. 1997) (cleaned up) (quoting A.L. Corbin, Corbin on Contracts, § 1266 at 66–67 (1962)). See also *Excell Consulting Int'l, Inc. v. DTH Corp.*, 2023 WL 12057232, at *5 (Colo. App. Mar. 30, 2023) (holding that material breach by improper termination would not bar terminating party from enforcing preexisting payment obligations).

Cody Lane is entitled to introduce evidence and arguments about its breach-of-contract claims based on Layton's pre-termination conduct, regardless of whether its termination decision was proper. This includes, but is not limited to, evidence of (a) Layton's defective work; (b) acts and omissions by Layton that forced Cody Lane to pay settlements to Layton's subcontractors to facilitate completion of the project; and (c) liquidated damages for Layton's unexcused failure to timely complete the work. (ECF No. 1 at 14-15, ¶¶ 64(b)-(c), (e)). Evidence and argument should be permitted at trial as it is directly relevant to the bases of Cody Lane's termination decision.

## CONCLUSION

For the foregoing reasons, Cody Lane's Motion in Limine should be granted.

**DATED** January __, 2026.

CODY LANE DEVELOPMENT CORP.

By: _____
Tyler J. Garrett, WSB # 6-4400
Kari A. Hartman WSB # 8-6507
HATHAWAY & KUNZ, LLP
P.O. Box 1208
Cheyenne, WY 82003-1208
Phone: 307-634-7723
Fax: 307-634-0985
tgarrett@hkwyolaw.com
khartman@hkwyolaw.com

Jeffrey B. Charkow
Owen K. Newman

15

Duane Morris LLP
190 South LaSalle Street, Ste. 3700
Chicago, IL 60603
Phone: 312-499-6701
jbcharkow@duanemorris.com
oknewman@duanemorris.com


*Attorneys for Plaintiff*
*Cody Lane Development Corp.*

**Certificate of Service**

This is to certify that on the _____ day of January, 2025, a true and correct copy of the foregoing was upon counsel via CM/ECF as follows:

| | |
|---|---|
| Bryan S. Johansen<br>Sara M. Nielson<br>Michael T. Hoppe<br>Parr Brown Gee & Loveless<br>101 South 200 East, Ste., 700<br>Salt Lake City, UT 84111<br>bjohansen@parrbrown.com<br>snielson@parrbrown.com<br>mhoppe@parrbrown.com<br><br>*Attorney for Layton Construction Company LLC* | Giovanni Michael Ruscitti<br>Sally Piskun<br>Berg Hill Greenleaf Ruscitti LLP<br>1712 Pearl Street<br>Boulder, CO 80302<br>gmr@bhgrlaw.com<br>sp@bhgrlaw.com<br><br>*Attorneys for Greiner Electric LLC*<br>*Attorneys for RK Mechanical Inc* |
| Erika M. Nash<br>Justin Ashkhan Daraie<br>Randall B. Reed<br>Long Reimer Winegar Beppler LLP<br>PO Box 3070<br>Jackson, WY 83001<br>enash@lrw-law.com<br>jdaraie@lrw-law.com<br>rreed@lrw-law.com<br><br>*Attorneys for Layton Construction Company LLC* | Ian W. Carmen<br>Berg Hill Greenleaf Ruscitti LLP<br>1712 Pearl Street<br>Boulder, CO 80302<br>ian.carmen@bhgrlaw.com<br><br>*Attorneys for Greiner Electric LLC*<br>*Attorneys for RK Mechanical Inc* |
| L. Tyrone Holt<br>The Holt Group LLC<br>1675 Broadway, Ste., 2100<br>Denver, CO 80202<br>ty.holt@holtllc.com<br><br>*Attorney for Layton Construction Company LLC* | Daniel Kenneth Johnson<br>Lee Mann<br>Kilpatrick Townsend & Stockton LLP<br>1100 Peachtree Street, NE, Ste., 2800<br>Atlanta, GA 30309<br>dkjohnson@ktslaw.com<br>lmann@kilpatricktownsend.com<br><br>*Attorneys for Cives Corporation* |
| Brian Ray Lambert | Isaiah I. Gross |

17

DM3\22310715.2

| | |
|---|---|
| Trenton H. Cotney<br>Roscoe Green<br>Adams and Reese LLP<br>100 N. Tampa Street, Ste., 4000<br>Tampa, FL 33602<br>brian.lambert@arlaw.com<br>trent.cotney@arlaw.com<br>roscoe.green@arlaw.com<br><br>*Attorneys for Sprayfoam d/b/a Global Roofing Group* | Stetlting & Gross LLC<br>PO Box 3159<br>Jackson, WY 83001<br>isaiah@s-g.law<br><br>*Attorneys for Cives Corporation* |
| Billie L. M. Addleman<br>Tyson Richard Woodford<br>Hirst Applegate LLP<br>PO Box 1083<br>Cheyenne, WY 82003-1083<br>baddleman@hirstapplegate.com<br>twoodford@hirstapplegate.com<br><br>*Attorneys for Greiner Electric LLC*<br>*Attorneys for RK Mechanical Inc.* | Erica Rachel Day<br>Stuart R. Day<br>Carl Edelman<br>Williams Porter Day & Neville PC<br>PO Box 10700<br>Casper, WY 82602<br>eday@wpdn.net<br>sday@wpdn.net<br>cedelman@wpdn.net<br><br>*Attorneys for Phaze Concrete Inc.* |
| Frederick J. Hahan, III<br>Hahn Law<br>PO Box 50698<br>Idaho Falls, ID 83405<br>fjh@hahn-law.net<br><br>*Attorneys for Intermountain Erectors Inc.* | Thomas Ardell Larkin<br>Tyler J. Storti<br>Sokol Larkin Wagner & Storti LLC<br>4380 S. Macadam Avenue, Ste., 530<br>Portland, OR 97239<br>tlarkin@sokol-larkin.com<br>tstorti@sokol-larkin.com<br><br>*Attorneys for Intermountain Erectors Inc.* |

                                         */s/ Lori Pallak*
                                             Hathaway & Kunz, LLP