Randall B. Reed (Wyo. Bar No. 5-2863)
Erika M. Nash (Wyo. Bar No. 6-3867)
Justin Daraie (Wyo. Bar No. 7-4690)
**LONG REIMER WINEGAR, LLP**
2120 Carey Avenue, Suite 300
Cheyenne, Wyoming 82001
Telephone: 307-635-0710
*rreed@lrw-law.com*
*jdaraie@lrw-law.com*
*enash@lrw-law.com*

Michael T. Hoppe (pre hac vice)
Bryan S. Johansen (pro hac vice)
Sara Meg Nielson (pro hac vice)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
*mhoppe@parrbrown.com*
*bjohansen@parrbrown.com*
*snielson@parrbrown.com*

L. Tyrone Holt (pro hac vice)
**THE HOLT GROUP, LLC**
1675 Broadway, Suite 2100
Denver, Colorado 80202
*tholt@holtllc.com*

*Attorneys for Defendant Layton Construction Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| CODY LANE DEVELOPMENT CORP.,<br><br>Plaintiff / Counterclaim Defendant,<br>v.<br><br>LAYTON CONSTRUCTION COMPANY, LLC,<br><br>Defendant / Counterclaim Plaintiff. | Case No. 2:24-cv-00064-KHR<br><br>The Honorable Kelly H. Rankin<br><br>Magistrate Judge Stephanie Hambrick |
| LAYTON CONSTRUCTION CO., LLC,<br><br>Third Party Plaintiff,<br><br>v.<br><br>SPRAYFOAM SOUTHWEST, INC. DBA GLOBAL ROOFING GROUP, ET AL.<br><br>Third-Party Defendants | |

# WITNESS STATEMENT OF PASHA AMELI

## I. INTRODUCTION

1. I was retained by The Holt Group ("Counsel") on behalf of Layton Construction Company, LLC ("Layton") in connection with construction of a residential construction project in Jackson Hole, Wyoming, known as the Hoback Club ("Project"). Specifically, I was hired to evaluate and provide rebuttal responses to certain opinions provided by experts designated by the owner of the Project, Cody Lane Development Corp. ("Cody Lane"): Scott Maloney of K2M and Andrew Pratt of FTI ("FTI").

2. I have been directed by counsel to include in this written witness statement my opinions rebutting the work of FTI. This written statement does not currently include my opinions rebutting Scott Maloney's opinions on post-termination subcontractor settlements based on the understanding that those opinions by Mr. Maloney are related to damages, which will be tried in the second phase of this litigation. If the Court determines to allow into evidence Mr. Maloney's opinion testimony related to post-termination subcontractor settlement agreements, this statement will need to be revised to include my opinions rebutting Mr. Maloney.

### I.A. Qualifications, Pasha Ameli, Ph.D., P.E.

3. I am a licensed Professional Civil Engineer, experienced in construction advisory, project management, and forensic construction claims investigations. My comprehensive background includes quantification of damages, assessment of loss of productivity, estimation of repair costs, and conducting internal audits.

4. Throughout my career, I have been actively involved in a diverse range of residential, commercial, and industrial projects. These include multi-family and high-rise residential buildings, class A office complexes, elementary schools, performing arts centers, sports arenas, hospitals, hotels, transit centers, light-rail systems, solar farms, Floating Production Storage and Offloading (FPSO) systems, rare earth mineral extraction plants, and hazardous material processing chemical facilities.

5. My education and professional experience are further described in my curriculum vitae, which is Exhibit A to the expert report that I authored in this case, trial exhibit D5521.

6. I reserve the right to amend these opinions in the event additional information comes to my attention that merits such amendments.

### I.B. Documents Reviewed and Information Relied Upon

7. I have relied upon the following categories of documents in forming the opinions contained in this report, which documents specifically relied on footnoted throughout:

- FTI's June 12, 2024 Expert Report, including Appendices;
- Subcontractors' Work Authorizations
- Layton Payment Applications
- Layton OCOs
- SMC Payment Applications
- SMC OCOs
- Subcontractor Change Orders
- Capital Consultants Inc. Review of Payment Application Reports

## II. SUMMARY OF OPINIONS

8. In its report, FTI reviewed Layton's project billings as of February 2024 through Layton Payment Application #38. FTI then opined that (a) Layton misrepresented Subcontractor billings; and (b) Layton's Payment Applications misrepresented actual work progress.[1]

9. First, it is my opinion that FTI's suggestion that Layton misrepresented Subcontractor billings in its Payment Applications is incorrect. FTI fails to acknowledge that Layton's Payment Applications include billings related to CCD and PCO work that had not yet been incorporated into executed OCOs.

10. Second, it is my opinion that FTI's suggestion that Layton's Payment Applications misrepresented actual work progress is incorrect. FTI's methodology is flawed and ignores contemporaneous Project records and occurrences that validate Layton's reported work progress.

## III. REVIEW OF PROJECT BILLINGS AND CONTEMPORANEOUS REPORTS

11. FTI's analysis of and opinions about Layton's Project Billings are flawed for multiple reasons. In this statement, I will first explain two key analyses that I performed in conjunction with reviewing FTI's opinions and the key conclusions I reached from my analyses: (A) a comparison of Layton's billings with the billings of the replacement contractor, and (B) a review of contemporaneous documents that reported on progress of the work during Layton's time on the Project. I will then respond specifically to FTI's two major opinions, first, that Layton misrepresented Subcontractor billings and, second, that Layton's Payment Applications misrepresented actual work progress.

---

[1] FTI also purported to evaluate alleged non-conforming work. Rebuttal to that portion of FTI's opinions is provided by others.

**III.A. <u>The Completion Contractor (SMC) Accepted Layton's Reporting of the Status of the Work Through December 2023.</u>**

12. As part of my analysis of FTI's opinions, I compared Layton's billings with the billings submitted by the contractor Cody Lane hired to replace Layton, SMC, after Layton's termination. Some key information emerged from that review.

13. Layton issued monthly Applications and Certificates for Payment ("Payment Applications") to Cody Lane throughout its tenure at the Project. Each of these Payment Applications consistently, among other items, included the following information:

-A detailed breakdown of the scope of the work,
-Cost of the work (including contracted amount and any approved changes), and
-Status of the completed work (as of the date of each Payment Application).

14. As is customary and expected in construction projects, in this Project upon certification and approval of the Payment Applications by Arcadis, the Project architect ("Architect"), Cody Lane would have issued payments for each of the approved Payment Applications.

15. Layton received payments from Cody Lane for the work that was completed through December 2023, including for Payment Application #37.[2] Layton did not receive reimbursement for the work that was completed and managed by Layton in 2024 (January 1, 2024 through March 11, 2024), which was submitted for payment to Cody Lane in Layton's Payment Application #38 and #39.

16. Upon review of the available SMC Payment Applications, I determined that the scope of the work that was completed in 2024 (under Layton's management) was retrospectively awarded to SMC and was eventually included in SMC's Payment Applications #38 and #39.[3] The first Payment Application SMC submitted on the Project was Payment Application #38.

17. My review of the details included in Layton's Payment Application #37 (through December 2023) and the details included in SMC's Payment Application #38 (January 2024) indicates that SMC accepted and adopted the status of the work through December 2023, without any changes and as it was reported by Layton in Payment Application #37. SMC made no modifications to the total amount completed and stored to date of the Payment Application (Project progress) that Layton included, that the Project Architect certified, and that Cody Lane paid in Payment Application #37.

---

[2] Ex. J0580 (Layton's Payment Application #37).
[3] Ex. D5217 (SMC's Payment Application #38); Ex. D5246 (SMC's Payment Application # 39).

18. For example, Layton Payment Application #37 indicated that the Concrete scope of work was originally contracted for $23,311,705 and was increased by $3,003,104 to a total adjusted contract amount of $26,314,809. Layton reported that $25,948,692 was completed through December 2023.

19. SMC Payment Application #38 also indicated that the concrete scope of work was originally contracted for $23,311,705 and was increased by $3,003,104 to a total amount of $26,314,809. SMC included that $25,948,692 was completed through previous Payment Applications. This amount is the same amount that was reported by Layton as work completed and stored to date through December 2023.

20. I reviewed the status of the work for the remaining scopes of the work and determined that SMC accepted and adopted the status of the completed work as it was reported in Layton's Payment Application #37 as the status of the work through December 2023.

21. In fact, SMC Payment Application #38 indicated that, in total, $130,596,353 of the work was completed in previous payment applications. This total was the same amount reported by Layton as the work completed through December 2023.[4] See screenshots below of each of the documents referenced above.

22. Layton Payment Application #37:

**CONTINUATION SHEET** **AIA DOCUMENT G703** PAGE: 4

AIA DOCUMENT G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing Contractor's signed Certification is attached.
In tabulation below, amounts are stated to the nearest cent.
Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NUMBER :37
APPLICATION DATE :01/17/2024
PERIOD TO :12/31/2023

INVOICE NO. 2110020049

| A | B | C | | | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | | | WORK COMPLETED (D+E) | | MATERIAL PRESENTLY STORED | TOTAL COMPLETED AND STORED TO DATE | PER % ( G/C ) | BALANCE TO FINISH | RETAINAGE |
| | | ORIGINAL | CHANGE ORDERS | CURRENT | FROM PREVIOUS APPLICATION | THIS PERIOD | | | | | |
| 13.11 | Swimming Pools | 3,608,938.00 | 26,439.00 | 3,635,377.00 | 1,311,581.35 | 54,500.00 | 292,800.00 | 1,658,881.35 | 45.63 | 1,976,495.65 | 153,245.14 |
| 13.24 | Sauna & Steam Rooms | 600,000.00 | 400,042.00 | 1,000,042.00 | 0.00 | 0.00 | 308,601.00 | 308,601.00 | 30.86 | 691,441.00 | 30,860.10 |
| 14.00 | Elevators | 3,487,674.00 | -131,770.00 | 3,355,904.00 | 2,106.31 ~~1,428,692.34~~ | 0.00 | 1,426,586.03 ~~0.00~~ | 1,428,692.34 | 42.57 | 1,927,211.66 | 71,539.93 |
| 21.00 | Fire Sprinkler | 1,157,432.00 | 67,841.00 | 1,225,273.00 | 774,575.95 | 0.00 | 317,147.32 | 1,091,723.27 | 89.10 | 133,549.73 | 73,230.11 |
| 22.00 | Mechanical | 31,246,413.00 | 4,684,527.00 ~~4,601,946.00~~ | 35,930,940.00 ~~35,848,359.00~~ | 31,256,711.47 ~~31,357,361.47~~ | 1,428,629.10 ~~1,521,069.10~~ | 849,738.00 ~~749,088.00~~ | 33,535,078.57 ~~33,627,518.57~~ | 93.33 ~~93.80~~ | 2,395,861.43 ~~2,220,840.43~~ | 2,226,721.13 ~~2,235,965.13~~ |
| 26.00 | Electrical | 22,270,931.00 | 3,477,606.00 ~~2,713,333.00~~ | 25,748,537.00 ~~24,984,264.00~~ | 16,891,184.17 ~~17,440,414.93~~ | 1,110,456.49 ~~1,547,677.29~~ | 5,143,642.83 ~~4,594,412.07~~ | 23,145,283.49 ~~23,582,504.29~~ | 89.89 ~~94.39~~ | 2,603,253.51 ~~1,401,759.71~~ | 1,573,917.63 ~~1,617,639.71~~ |
| 27.00 | Water Line Break | 0.00 | 7,937.00 | 7,937.00 | 6,437.15 | 0.00 | 0.00 | 6,437.15 | 81.10 | 1,499.85 | 321.86 |
| 28.00 | Sales & Use Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 31.10 | Earthwork | 12,203,851.00 | 3,065,489.00 ~~3,064,246.00~~ | 15,269,340.00 ~~15,268,097.00~~ | 13,831,918.14 | 7,065.00 | 0.00 | 13,838,983.14 | 90.63 ~~90.64~~ | 1,430,356.86 ~~1,429,113.86~~ | 751,870.81 |
| 31.16 | Earth Shoring | 2,327,743.00 | -405,657.00 | 1,922,086.00 | 1,724,452.00 | 634.00 | 0.00 | 1,725,086.00 | 89.75 | 197,000.00 | 86,683.50 |
| 31.25 | Dewatering | 2,252,520.00 | -412,045.00 | 1,840,475.00 | 1,087,932.83 | 0.00 | 0.00 | 1,087,932.83 | 59.11 | 752,542.17 | 63,426.52 |
| 32.13 | Site Concrete | 714,925.00 | -661,056.00 | 53,869.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 53,869.00 | 0.00 |
| 32.32 | Fencing | 394,653.00 | -5,361.00 | 389,292.00 | 0.00 | 0.00 | 222,546.00 | 222,546.00 | 57.17 | 166,746.00 | 22,254.60 |
| 32.80 | Landscaping | 1,661,109.00 | 102,248.00 | 1,763,357.00 | 497,497.87 | 0.00 | 76,665.18 | 574,163.05 | 32.56 | 1,189,193.95 | 40,445.94 |
| 33.00 | Equipment & Techonology "Modernization" | 200,000.00 | | | | | | | | 0.00 | 0.00 |
| 34.00 | Addendum 9 - Teton County Permit Comments | 50,000.00 | | | | | | | | 0.00 | 0.00 |
| 35.00 | Addendum 10 - QA/QC Comments | 50,000.00 | | | | | | | | 0.00 | 0.00 |
| 36.00 | Addendum 12 - For Sale Unit Improvements | 4,205,000.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 85.00 | Escalation After GMP | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | 0.00 | 100,000.00 | 100,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100,000.00 | 0.00 |
| | Direct Trade Costs Total: | 187,309,819.00 | 16,629,010.00 ~~15,058,093.00~~ | 203,938,829.00 ~~202,367,912.00~~ | 125,829,039.69 ~~130,455,015.17~~ | 4,767,312.86 ~~7,629,578.38~~ | 30,281,992.45 ~~24,403,139.39~~ | 160,878,345.00 ~~162,487,732.94~~ | 78.89 ~~80.29~~ | 43,060,484.00 ~~38,880,179.06~~ | 10,767,843.29 ~~10,939,927.63~~ |

**Figure 1: Extract of Layton's Approved Payment Application #37 (Emphasis Added)[5]**

[4] $130,596,353 = $125,829,039 + $4,767,312

[5] Ex. J0580.

23. SMC Payment Application #38:




OWNER:
SCHEDULE OF VALUES

PROJECT NAME: THE HOBACK CLUB
ARCHITECT: ARCADIS
CONTRACTOR: SMC CONSTRUCTION COMPANY

DATE: 4/6/2024
PERIOD FROM: 1/1/2024
PERIOD TO: 1/31/2024

SCHEDULE OF VALUES

| LINE # A | DESCRIPTION OF WORK | Contractor / Subcontractor | REVISED BUDGET C | CHANGE ORDERS E | REVISED VALUE (C+D+E) | WORK COMPLETED PREV. F | THIS APP. G | STORED MAT'L H | TOTAL COMPLETE STORED TO DATE I (F + G +H) | BALANCE TO FINISH | RETENTION TO DATE | FUNDS REQUESTED | % Complete To Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | SUBCONTRACTORS | | | | | | | | | | | | |
| | Hoisting | Stafford Colorado | 5,565,062.00 | -806,958.00 | 4,778,104.00 | 4,001,340.98 | 37,858.12 | 0.00 | 4,039,199.10 | 738,904.90 | 162,015.24 | 34,072.31 | 84.54% |
| | Scaffolding | Apache Industrial | 1,045,713.00 | 0.00 | 1,045,713.00 | 1,045,713.00 | 0.00 | 0.00 | 1,045,713.00 | 0.00 | 76,755.91 | 0.00 | 100.00% |
| | Concrete | Phaze | 23,311,705.00 | 3,003,104.00 | 26,314,809.00 | 25,948,691.78 | 146,922.60 | 28,000.00 | 26,123,614.38 | 191,194.62 | 1,424,048.06 | 132,230.34 | 99.27% |
| | Masonry | IMS Masonry | 5,612,589.00 | 327,912.00 | 5,940,501.00 | 2,518,111.82 | 71,675.00 | 255,948.00 | 2,845,734.82 | 3,094,766.18 | 219,351.78 | 64,507.50 | 47.90% |
| | Steel | Cives & IEI | 3,127,200.00 | 632,311.00 | 3,759,511.00 | 3,519,388.00 | 0.00 | 238,840.00 | 3,758,228.00 | 1,283.00 | 206,845.26 | 0.00 | 99.97% |
| | Ornamental Metals | All Metals Fabrication | 1,157,998.00 | 653,423.00 | 1,811,421.00 | 409,964.00 | 40,000.00 | 155,000.00 | 604,964.00 | 1,206,457.00 | 53,746.40 | 36,000.00 | 33.40% |
| | Heavy Timber | | 127,129.00 | -126,729.00 | 400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 0.00 | 0.00 | 0.00% |
| | Architectural Woodwork-Public | Brochsteins | 4,150,361.00 | 581,907.00 | 4,732,268.00 | 319,841.46 | 79,579.00 | 1,374,721.50 | 1,774,141.96 | 2,958,126.04 | 123,753.50 | 82,986.30 | 37.49% |
| | Architectural Woodwork-Residential | Allegheny Millwork | 9,073,185.00 | 1,323,930.00 | 10,397,115.00 | 1,392,510.47 | 48,641.09 | 6,498,920.07 | 7,940,071.63 | 2,457,043.37 | 710,603.24 | 426,101.11 | 76.37% |
| | Below Grade Waterproofing | Specialty Systems | 1,976,663.00 | 1,774,827.00 | 3,751,490.00 | 3,653,941.00 | 0.00 | 11,000.00 | 3,664,941.00 | 86,549.00 | 256,958.85 | 0.00 | 97.69% |
| | Deck Waterproofing | Specialty Systems | 118,009.00 | -110,683.00 | 7,326.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,326.00 | 0.00 | 0.00 | 0.00% |
| | Above Grade Waterproofing | Specialty Systems | 772,616.00 | -772,616.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% |
| | Insulation | Builders Service/USI | 1,346,522.00 | 90,477.00 | 1,436,999.00 | 778,752.98 | 19,094.99 | 0.00 | 797,847.97 | 639,151.03 | 67,016.65 | 17,185.49 | 55.52% |
| | Metal Panels | | 603,887.00 | -593,887.00 | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.00% |
| | Wood Siding | Prestige | 1,371,128.00 | 744,539.00 | 2,115,667.00 | 1,178,064.32 | 0.00 | 320,550.48 | 1,498,614.80 | 617,052.20 | 140,111.48 | 0.00 | 70.83% |
| | Roofing (Global) | Sprayfoam Southwest | 1,987,490.00 | 411,817.00 | 2,399,307.00 | 1,871,385.08 | 0.00 | 268,331.53 | 2,139,716.61 | 259,590.39 | 152,305.76 | 0.00 | 89.18% |
| | Roofing Anchors | Rooftop Anchors | 18,000.00 | 15,331.00 | 33,331.00 | 33,331.00 | 0.00 | 0.00 | 33,331.00 | 0.00 | 2,026.05 | 0.00 | 100.00% |
| | Fireproofing | American National Ins. | 183,505.00 | 0.00 | 183,505.00 | 150,215.90 | 0.00 | 0.00 | 150,215.90 | 33,289.10 | 12,521.59 | 0.00 | 81.86% |
| | Doors/Frames/Hardware | Allegheny Millwork | 4,696,036.00 | 1,685,565.00 | 6,381,601.00 | 588,732.36 | 0.00 | 3,646,536.97 | 4,235,269.33 | 2,146,331.67 | 395,625.64 | 0.00 | 66.37% |
| | Overhead Doors | Western Industrial | 84,994.00 | 47,160.00 | 132,154.00 | 102,174.00 | 0.00 | 29,980.00 | 132,154.00 | 0.00 | 11,716.40 | 0.00 | 100.00% |
| | Fire Curtains | B&B Specialties | 265,765.00 | 24,440.00 | 290,205.00 | 2,820.00 | 0.00 | 240,875.00 | 243,695.00 | 46,510.00 | 16,253.20 | 0.00 | 83.97% |
| | Exterior Glazing | Mollerup Glass | 4,014,045.00 | 610,330.00 | 4,624,375.00 | 2,925,131.00 | 46,271.00 | 1,085,764.00 | 4,057,166.00 | 567,209.00 | 283,433.06 | 41,643.90 | 87.73% |
| | Interior Glass | Mollerup Glass | 963,400.00 | -766,454.00 | 196,946.00 | 0.00 | 0.00 | 166,988.00 | 166,988.00 | 29,958.00 | 15,349.80 | 0.00 | 84.79% |
| | Framing/Drywall-Ext | SDI | 1,662,982.00 | -1,586,120.00 | 76,862.00 | 76,862.00 | 0.00 | 0.00 | 76,862.00 | 0.00 | 7,397.15 | 0.00 | 100.00% |
| | Framing/Drywall-Int | SDI | 7,016,006.00 | 1,858,182.00 | 8,874,188.00 | 7,889,926.59 | 59,852.24 | 403,533.00 | 8,353,311.83 | 520,876.17 | 746,482.58 | 53,867.02 | 94.13% |
| | Plaster - Public | The Berg Group | 944,653.00 | 3,906.00 | 948,559.00 | 0.00 | 0.00 | 47,363.20 | 47,363.20 | 901,195.80 | 4,736.32 | 20,422.08 | 4.99% |
| | Plaster - Residential | The Berg Group | 2,936,841.00 | 135,876.00 | 3,072,717.00 | 240,644.62 | 6,000.00 | 115,592.29 | 362,236.91 | 2,710,480.09 | 36,223.69 | 5,400.00 | 11.79% |
| | Tile - Public | American Stone | 2,083,616.00 | 427,549.00 | 2,511,165.00 | 396,182.33 | 0.00 | 1,304,546.16 | 1,700,728.49 | 810,436.51 | 114,624.79 | 0.00 | 67.73% |
| | Tile - Residential | American Stone | 5,745,086.00 | 518,878.00 | 6,263,964.00 | 468,538.59 | 0.00 | 3,862,590.53 | 4,331,129.12 | 1,932,834.88 | 284,618.14 | 27,213.30 | 69.14% |
| | ACT | The Berg Group | 59,972.00 | 15,209.00 | 75,181.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75,181.00 | 0.00 | 0.00 | 0.00% |
| | Flooring | Commercial Flrg | 209,706.00 | 139,498.00 | 349,204.00 | 0.00 | 0.00 | 23,594.00 | 23,594.00 | 325,610.00 | 2,359.40 | 0.00 | 6.76% |
| | Resinous Flooring | Specialty Systems | 423,962.00 | -423,962.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% |
| | Wood Flooring - Public | Mountain Heights | 289,150.00 | -36,083.00 | 253,067.00 | 0.00 | 0.00 | 0.00 | 0.00 | 253,067.00 | 0.00 | 0.00 | 0.00% |
| | Wood Flooring - Residential | Mountain Heights | 2,539,565.00 | 506,106.00 | 3,045,671.00 | 0.00 | 68,197.41 | 1,325,819.53 | 1,394,016.94 | 1,651,654.06 | 96,389.03 | 61,377.67 | 45.77% |
| | Paint - Public | The Berg Group | 554,261.00 | 76,171.00 | 630,432.00 | 260,486.00 | 0.00 | 4,292.50 | 264,778.50 | 365,653.50 | 26,821.25 | 3,863.25 | 42.00% |
| | Paint - Residential | The Berg Group | 402,650.00 | 1,467.00 | 404,117.00 | 16,920.40 | 41,326.00 | 3,434.00 | 61,680.40 | 342,436.60 | 5,824.64 | 40,284.00 | 15.26% |
| | Specialties | Midwest D-Vision | 213,741.00 | 66,389.00 | 280,130.00 | 30.00 | 0.00 | 110,192.00 | 110,222.00 | 169,908.00 | 11,022.20 | 0.00 | 39.35% |
| | Signage | Allotech | 203,750.00 | 24,008.00 | 227,758.00 | 20,117.60 | 0.00 | 0.00 | 20,117.60 | 207,640.40 | 2,011.76 | 0.00 | 8.83% |
| | Operable Partitions | Alder Sales | 28,673.00 | 0.00 | 28,673.00 | 0.00 | 0.00 | 5,734.60 | 5,734.60 | 22,938.40 | 573.46 | 0.00 | 20.00% |
| | Fireplaces | Hearth & Home | 1,002,950.00 | 136,275.00 | 1,139,225.00 | 721,316.00 | 0.00 | 0.00 | 721,316.00 | 417,909.00 | 49,662.35 | 0.00 | 63.32% |
| | Vehical Wash Equipment | Intermountain Equip | 17,294.00 | 0.00 | 17,294.00 | 8,647.00 | 0.00 | 6,917.69 | 15,564.69 | 1,729.31 | 1,124.11 | 0.00 | 90.00% |
| | Loading Dock Equipment | Western Industrial | 24,522.00 | 11,675.00 | 36,197.00 | 29,339.00 | 0.00 | 0.00 | 29,339.00 | 6,858.00 | 2,933.90 | 0.00 | 81.05% |
| | Residential Appliances | Mountain Land Design | 1,415,083.00 | 75,053.00 | 1,490,136.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,490,136.00 | 0.00 | 0.00 | 0.00% |
| | Food Service Equipment | Stafford Smith | 1,065,965.00 | 15,935.00 | 1,081,900.00 | 40,551.42 | 0.00 | 609,510.64 | 650,062.06 | 431,837.94 | 64,606.07 | 0.00 | 60.09% |
| | Window Covering | Design Team | 445,200.00 | 102,012.00 | 547,212.00 | 1,000.00 | 0.00 | 0.00 | 1,000.00 | 546,212.00 | 50.00 | 0.00 | 0.18% |
| | Swimming Pools | CEM Aquatics | 3,608,938.00 | 26,439.00 | 3,635,377.00 | 1,366,081.35 | 315,000.00 | 292,800.00 | 1,973,881.35 | 1,661,495.65 | 184,745.14 | 283,500.00 | 54.30% |
| | Sauna & Steam Rooms | Design for Leisure | 600,000.00 | 400,042.00 | 1,000,042.00 | 0.00 | 0.00 | 308,601.00 | 308,601.00 | 691,441.00 | 30,860.10 | 0.00 | 30.86% |
| | Elevators | TK | 3,487,674.00 | -131,770.00 | 3,355,904.00 | 2,106.31 | 139,260.60 | 1,426,586.03 | 1,567,952.94 | 1,787,951.06 | 85,465.99 | 125,334.54 | 45.72% |
| | Fire Sprinkler | Phoenix Fire | 1,157,432.00 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 1,123,645.07 | 101,627.93 | 76,422.29 | 28,729.63 | 91.71% |
| | Mechanical | RK Mechanical | 31,246,413.00 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 33,776,746.11 | 2,154,193.89 | 2,250,887.88 | 217,500.79 | 94.00% |
| | Electrical | Greiner Electric | 22,270,931.00 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 23,667,554.81 | 2,060,982.19 | 1,626,144.76 | 470,044.19 | 91.92% |
| | Water Line Break | | 0.00 | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 6,437.15 | 1,499.85 | 321.86 | 0.00 | 81.10% |
| | Sales & Use Tax | | 0.00 | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% |
| | Earthwork | Phaze | 12,203,651.00 | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 13,957,218.88 | 1,312,121.12 | 763,694.38 | 106,412.17 | 91.41% |
| | Earth Shoring | Coggins &Son | 2,327,743.00 | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 1,725,086.00 | 197,000.00 | 86,683.50 | 0.00 | 89.75% |
| | Dewatering | Keller Industrial | 2,252,520.00 | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 1,087,932.83 | 752,542.17 | 63,426.52 | 0.00 | 59.11% |
| | Site Concrete | JM Concrete | 714,925.00 | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 53,669.00 | 0.00 | 0.00 | 0.00% |
| | Fencing | Independent Fence | 394,653.00 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 222,546.00 | 166,746.00 | 22,254.60 | 0.00 | 57.17% |
| | Landscaping | Intermountain Planting | 1,661,109.00 | 102,248.00 | 1,763,357.00 | 497,497.87 | 0.00 | [illegible] | 574,163.05 | 1,189,193.95 | 40,445.94 | 0.00 | 32.56% |
| | Equip/Technology | | 200,000.00 | -200,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% |
| | Addendum 9 | | 50,000.00 | -50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% |
| | Addendum 10 | | 50,000.00 | -50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% |
| | Addendum 12 | | 4,205,000.00 | -4,205,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% |
| | Escalation After GMP | | 0.00 | 100,000.00 | 100,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100,000.00 | 0.00 | 0.00 | 0.00% |
| | | SUBTOTAL | 187,309,819.00 | 16,629,010.00 | 203,938,829.00 | 130,596,352.53 | 2,033,774.45 | 30,782,302.05 | 163,412,429.03 | 40,526,399.97 | 11,021,251.67 | 2,260,675.59 | 80.13% |

SMC CONSTRUCTION COMPANY

**Figure 2: Extract of SMC's Approved Payment Application #38 (Emphasis Added)**[6]

24. I would expect a replacement contractor in SMC's position, faced with taking over a project, to modify the previous contractor's report of the financial status and progress of the work if it disagreed with that report. After all, from that point forward SMC would be responsible for completing the Project. It would have no incentive to indicate that the Project was more complete than it actually was. But SMC did not make any modifications. That indicates to me that SMC accepted what Layton reported as the financial status and progress of the work as of December 2023.

25. In short, SMC accepted that the work completed—the status of the work—through December 2023 was exactly what Layton represented it to be in its Payment Application #37. Cody Lane did the same when it accepted Payment Application #38 from SMC.

[6] Ex. D5217.

Thus, both SMC and Cody Lane agreed that the financial status of the work through December 2023 was exactly as Layton represented in Layton's Payment Application #37.

### III.B. Contemporaneous Documentation Supports the Percentage of Completion Reported in Layton's Payment Applications.

26. During the Project, La Mesa Fund Control and Escrow ("La Mesa"), as an advisor to Cody Lane, was responsible for reviewing and inspecting the project to verify that Layton's Payment Applications accurately reflected the amount of work completed during the applicable time period and that the cost of the work completed was consistent with the payment requested in the Payment Application.[7] It is my understanding that La Mesa contracted with Capital Consultants Inc. ("CCI") to inspect the Project and prepare reports to assist La Mesa.

27. CCI authored numerous reports throughout the duration of the Project. As part of its reports, CCI provided a recommendation regarding the overall payment requested in each Payment Application. CCI also provided its opinion on the percentage of completion of the hard cost budget line items and the overall percentage of completion.

28. The table below provides a summary of the CCI reports I received and reviewed, including CCI opinions on the payment recommendations and the progress of the work:

**Table 1: Summary of CCI Reports[8]**

| Item No. | Report Date | Report Title | Amount Requested Consistent with Value of Work in Place | Recommended Disbursement of Funds |
|---|---|---|---|---|
| 1 | 8/3/2021 | Review of Pay Application #05 | X | X |
| 2 | 9/1/2021 | Review of Pay Application #06 | X | X |

[7] Ex. D4086 (WTE 00104) (FCA).

[8] Ex. D4105 (CL_DDRM00485422); Ex. D4114 (CL_DDRM00485556); Ex. D4120 (CL_DDRM00485766); Ex. D4132 (CL_DDRM00486007); Ex. D4135 (CL_DDRM00486258); Ex. D4143 (CL_DDRM00486536); Ex. D4148 (CL_DDRM00486753); Ex. D4161 (CL_DDRM00486997); Ex. D4187 (CL_DDRM00487250); Ex. D4210 (CL_DDRM00487520); Ex. D4226 (CL_DDRM00487713); Ex. D4249 (CL_DDRM00487993); Ex. D4261 (CL_DDRM00488291); Ex. D4297 (CL_DDRM0488632); Ex. D4324 (CL_DDRM0488931); Ex. D4340 (CL_DDRM0489212); Ex. D4367 (CL_DDRM0004369); Ex. D4375 (CL_DDRM0489646); Ex. D4388 (CL_DDRM0490019); Ex. D4415 (CL_DDRM0490414); Ex. D4501 (CL_DDRM0557361); Ex. D4559 (CL_DDRM0490753); Ex. D4590 (CL_DDRM0491013); Ex. D4648 (CL_DDRM0491274); Ex. P0013 (CL_DDRM0491409); Ex. D4781 (CL_DDRM0491889); Ex. D4879 (CL_DDRM0492031); Ex. P0017 (CL_DDRM0004968); Ex. D5217 (CL_DDRM0492208); Ex. D5319 (CL_DDRM0492693); Ex. D5364 (CL_DDRM0493042); Ex. D5374 (CL_DDRM0493186).

| Item No. | Report Date | Report Title | Amount Requested Consistent with Value of Work in Place | Recommended Disbursement of Funds |
|---|---|---|---|---|
| 3 | 10/5/2021 | Review of Pay Application #07 | X | X |
| 4 | 11/11/2021 | Review of Pay Application #08 | X | X |
| 5 | 12/20/2021 | Review of Pay Application #09 | X | X |
| 6 | 1/20/2021 | Review of Pay Application #10 | X | X |
| 7 | 2/15/2022 | Review of Pay Application #11 | X | X |
| 8 | 3/18/2022 | Review of Pay Application #12 | X | X |
| 9 | 4/14/2022 | Review of Pay Application #13 | X | X |
| 10 | 5/18/2022 | Review of Pay Application #14 | X | X |
| 11 | 6/15/2022 | Review of Pay Application #15 | X | X |
| 12 | 7/22/2022 | Review of Pay Application #16 | X | X |
| 13 | 8/17/2022 | Review of Pay Application #17 | X | X |
| 14 | 10/4/2022 | Review of Pay Application #18 | X | X |
| 15 | 10/21/2022 | Review of Pay Application #19 | X | X |
| 16 | 11/28/2022 | Review of Pay Application #20 | X | X |
| 17 | 12/30/2022 | Review of Pay Application #21 | X | X |
| 18 | 1/31/2023 | Review of Pay Application #22 | X | X |
| 19 | 2/24/2023 | Review of Pay Application #23 | X | X |
| 20 | 3/29/2023 | Review of Pay Application #24 | X | X |
| 21 | 5/24/2023 | Review of Pay Application #26 Partial Retention | X | X |
| 22 | 7/6/2023 | Review of Pay Application #28 | X | X |
| 23 | 8/3/2023 | Review of Pay Application #29 | X | X |
| 24 | 9/6/2023 | Review of Pay Application #30 | X | X |

| Item No. | Report Date | Report Title | Amount Requested Consistent with Value of Work in Place | Recommended Disbursement of Funds |
|---|---|---|---|---|
| 25 | 10/3/2023 | Review of Pay Application #31 Retention Release + #32 | X | X |
| 26 | 10/23/2023 | Review of Pay Application #33 | X | X |
| 27 | 11/22/2023 | Review of Pay Application #34 partial retention release (DDRM adjusted) Review of Pay Application #35 (DDRM adjusted) | X | X |
| 28 | 1/12/2024 | Review of Pay Application #37 (draft) | Adjustments being negotiated | Adjustments being negotiated |
| 29 | 4/17/2024 | Review of Pay Application #38 & #39 | X | X |
| 30 | 7/30/2024 | Review of Pay Application #44 & #45 | X | X |
| 31 | 10/7/2024 | Review of Pay Application #48 & #49 & #50 | X | X |
| 32 | 10/18/2024 | Review of Pay Application #51 | X | X |
| 33 | 1/12/2024 | Review of Pay Application #37 (draft) | X | X |
| 34 | 4/17/2024 | Review of Pay Application #38 & #39 | X | X |
| 35 | 7/30/2024 | Review of Pay Application #44 & #45 | X | X |

29. As demonstrated in the table above, in all of the available reports up to the report issued on January 12, 2024 for the review of Payment Application #37, CCI opined that the requested funds were consistent with the value of the work in place and recommended the disbursement of the requested funds.

30. CCI reported that its estimated percentage of completion for the individual hard cost line items were in line with the progress indicated in the Payment Applications. In other words, CCI agreed to the progress of the work—the amount and value of the work completed—that was reported by Layton in Payment Applications.

31. The excerpt below shows CCI's opinion regarding the percentage of completion of the hard cost line items.

3. *Consultant's estimated percentage of completion of the hard cost budget line items:*

Our estimate of the percentage of completion for the individual hard cost budget line items is generally consistent with the percentage of completion shown on the continuation sheets of the current Application for Payment.

**Figure 3: Extract of CCI Opinion on Direct Trade Progress for Payment Application 04 to 35**

CCI provided the same opinion in all CCI reports available to me for the period between Payment Application #4 and Payment Application #35.

32. In its January 12, 2024 report regarding its review of Payment Application #37, CCI indicated that it recommended the disbursement of funds per the adjustments being negotiated between Layton and the review team.

33. As mentioned earlier, Layton's Payment Application #37 was approved and certified by the Architect after revisions. The figure below shows the revisions in red, which included updates to Change Order amounts and modifications to material presently stored amounts and work completed amount.[9]

**CONTRACTOR'S APPLICATION FOR PAYMENT**

Application is made for payment, as shown below, in connection with the Contract. Continuation sheet is attached.

| | | |
|---|---|---|
| **1. ORIGINAL CONTRACT SUM** .................. $ | | 235,225,982.00 |
| **2. Net change by change orders** ............. | $11,681,234.00 | ~~9,989,408.00~~ |
| **3. CONTRACT SUM TO DATE** ( Line1 +/- 2 ) .. | $246,907,216.00 | ~~245,215,390.00~~ |
| **4. TOTAL COMPLETED & STORED TO DATE** (Column G on G703) | $194,073,634.52 | ~~196,143,560.66~~ |
| **5. RETAINAGE:** Total retainage Column I of G703) .............. | $12,964,337.88 | ~~13,182,476.04~~ |
| **6. TOTAL EARNED LESS RETAINAGE** ...... (Line 4 less Line 5 Total ) | $181,109,296.64 | ~~182,961,084.62~~ |
| **7. LESS PREVIOUS CERTIFICATES FOR PAYMENT** (Line 6 from prior Certificate) ......................$ | $177,564,065.01 ( | ~~177,266,759.51~~ |
| **8. CURRENT PAYMENT DUE** ......... | $4,139,842.63 $ | ~~5,694,325.11~~ |
| **9. BALANCE TO FINISH, INCLUDING RETAINAGE .** (Line 3 less Line 6 ) | $65,797,919.36 | ~~62,254,305.38~~ |

**Figure 4: Extract of Approved Layton Payment Application #37**

34. After Payment Application #37, in the remaining CCI reports available to me, including those following Layton's termination, CCI continued to opine that its estimate of the percentage of completion of the hard cost line items was in line with the progress reported by Layton and as documented in the Payment Applications.[10]

---

[9] Ex. J0580.

[10] Exs. D5217, D5319, D5364, D5374 (CCI Reports After January 2024).

## IV. RESPONSE TO FTI'S ASSESSMENT OF LAYTON'S PROJECT BILLINGS

### IV.A. Layton Did Not Misrepresent Subcontract Amounts.

35. FTI suggested that Layton's Payment Applications misrepresent the amounts of its various subcontracts.

36. Errors in FTI's analysis regarding Layton's representation of the subcontractor's billing cause FTI's analysis to be incorrect. Specifically, I determined that FTI's analysis did not account for the entirety of the billings for each scope of work.

37. For many subcontractors, the cost billed in the Payment Application line items or Schedule of Values ("SOV") included amounts for completed CCD and PCO work that was yet to be incorporated into a Change Order. Therefore, given that FTI compared Layton's billing only to subcontractors' Payment Applications, it disregarded the cost of the CCD and PCO work.

38. I verified the total amount billed to SOV line items according to Layton's Cost Transaction Report.[11] For example, the table below includes all billings to the SOV line item 22.00 (Mechanical scope of work) through February 2024:

**Table 2: Summary of All Billed Cost to SOV Line 22.00 Mechanical through February 2024**

| 22.00 Mechanical | Billing Amount |
|---|---|
| 145219474-0004 evap fans service call | 1,669 |
| 211002-15150003 Textura Draw #:3 | 695,370 |
| 211002-15150004 Textura Draw #:4 | 388,233 |
| 211002-15150005 Textura Draw #:5 | 869,315 |
| 211002-15150006 Textura Draw #:6 | 196,395 |
| 211002-15150007 Textura Draw #:7 | 746,305 |
| 211002-15150008 Textura Draw #:8 | 191,343 |
| 211002-15150009 Textura Draw #:9 | 590,963 |
| 211002-15150010 Textura Draw #:10 | 1,321,110 |
| 211002-15150011 Textura Draw #:11 | 1,255,753 |
| 211002-15150012 Textura Draw #:12 | 1,818,914 |
| 211002-15150013 Textura Draw #:13 | 1,849,599 |
| 211002-15150014 Textura Draw #:14 | 1,698,913 |
| 211002-15150015 Textura Draw #:15 | 2,134,097 |
| 211002-15150016 Textura Draw #:16 | 2,208,799 |

[11] Ex. D5489.

| 22.00 Mechanical | Billing Amount |
|---|---|
| 211002-15150017 Textura Draw #:17 | 4,156,561 |
| 211002-15150018 Textura Draw #:18 | 1,031,568 |
| 211002-15150019 Textura Draw #:19 | 1,320,964 |
| 211002-15150020 Textura Draw #:20 | 1,054,177 |
| 211002-15150021 Textura Draw #:21 | 894,468 |
| 211002-15150022 Textura Draw #:22 | 725,362 |
| 211002-15150024 Textura Draw #:24 | 1,298,312 |
| 211002-15150025 Textura Draw #:25 | 1,152,058 |
| 211002-15150026 Textura Draw #:26 | 1,258,157 |
| 211002-15150028 Textura Draw #:28 | 381,274 |
| 211002-15150029 Textura Draw #:29 | 519,514 |
| 211002-15150030 Textura Draw #:30 | 703,729 |
| 211002-15150031 Textura Draw #:31 | 576,611 |
| 211002-15150032 Textura Draw #:32 | 734,128 |
| 211002-15150033A Textura Draw #:33 | 619,179 |
| 211002-15150034A Textura Draw #:34 | 241,668 |
| 211002-15150035 Textura Draw #:35 | 198,799 |
| 211002-15152733 Textura Draw #:33 | 809,450 |
| 2737 Humidity units / temp conditions | 89,194 |
| 955406-001 Unit Acclimation / Electrical cords | 584 |
| CCD 137 - PCO 344.R1 CCD 137 - PCO 344.R1 | 3,236 |
| CCD 260 - PCO 479.R2 CCD 260 - PCO 479.R2 | 139,672 |
| CCD 272 - PCO 662 CCD 272 - PCO 662 | 12,558 |
| CCD 411 - PCO 613 CCD 411 - PCO 613 | 20,730 |
| CCD 438 - PCO 704 CCD 438 - PCO 704 | 179,414 |
| CCD 93 - PCO 329.R1 CCD 93 - PCO 329.R1 | 36,167 |
| RK Mech CCD 121 - COR 83 - 1 | 183,730 |
| SLS00000060012800 provide air and water lines for snow | 3,500 |
| SLS00000060012987 Snow making and air water lines in the ski run by JHMR | 58,036 |
| **Grand Total** | **34,369,575** |

39. As depicted above, in total, $34,369,575 was billed to the mechanical line-items (based on my evaluation of detailed cost records). The same amount was reported as the total

completed and stored to date value in Layton's Payment Application #38, as shown in the figure below:[12]

**CONTINUATION SHEET** **AIA DOCUMENT G703** PAGE: 4

AIA DOCUMENT G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing Contractor's signed Certification is attached.
In tabulation below, amounts are stated to the nearest cent.
Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NUMBER : 38
APPLICATION DATE : 03/18/2024
PERIOD TO : 02/29/2024

INVOICE NO.
2110020051

| A | B | C | | | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | | | WORK COMPLETED (D+E) | | MATERIAL PRESENTLY STORED | TOTAL COMPLETED AND STORED TO DATE | PER % ( G/C ) | BALANCE TO FINISH | RETAINAGE |
| | | ORIGINAL | CHANGE ORDERS | CURRENT | FROM PREVIOUS APPLICATION | THIS PERIOD | | | | | |
| **13.11** | Swimming Pools | 3,608,938.00 | 26,439.00 | 3,635,377.00 | 1,366,081.35 | 526,700.00 | 292,800.00 | 2,185,581.35 | 60.12 | 1,449,795.65 | 205,915.14 |
| 13.24 | Sauna & Steam Rooms | 600,000.00 | 400,042.00 | 1,000,042.00 | 0.00 | 59,062.00 | 308,601.00 | 367,663.00 | 36.76 | 632,379.00 | 36,766.30 |
| 14.00 | Elevators | 3,487,674.00 | -131,770.00 | 3,355,904.00 | 2,106.31 | 1,611,128.64 | 0.00 | 1,613,234.95 | 48.07 | 1,742,669.05 | 89,994.20 |
| 21.00 | Fire Sprinkler | 1,157,432.00 | 67,841.00 | 1,225,273.00 | 774,575.95 | 91,998.45 | 317,147.32 | 1,183,721.72 | 96.61 | 41,551.28 | 82,429.95 |
| 22.00 | Mechanical | 31,246,413.00 | 4,687,898.00 | 35,934,311.00 | 32,685,340.57 | 935,146.02 | 749,088.00 | 34,369,574.59 | 95.65 | 1,564,736.41 | 2,310,170.72 |
| 26.00 | Electrical | 22,270,931.00 | 3,611,292.00 | 25,882,223.00 | 18,001,640.66 | 2,053,240.52 | 4,594,412.07 | 24,649,293.25 | 95.24 | 1,232,929.75 | 1,724,318.61 |
| 27.00 | Water Line Break | 0.00 | 7,937.00 | 7,937.00 | 6,437.15 | 0.00 | 0.00 | 6,437.15 | 81.1[illegible] | 1,499.85 | 321.86 |
| 28.00 | Sales & Use Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 31.10 | Earthwork | 12,203,851.00 | 3,071,554.00 | 15,275,405.00 | 13,838,983.14 | 128,700.74 | [illegible] | [illegible] | [illegible] | [illegible]307,721.12 | 764,740.88 |
| 31.16 | Earth Shoring | 2,327,743.00 | -405,657.00 | 1,922,086.00 | 1,725,086.00 | 0.00 | [illegible] | [illegible] | [illegible] | [illegible]97,000.00 | 86,683.50 |
| 31.25 | Dewatering | 2,252,520.00 | -412,045.00 | 1,840,475.00 | 1,087,932.83 | 0.00 | 0.00 | 1,087,932.83 | 59.11 | [illegible]52,542.17 | 63,426.52 |
| 32.13 | Site Concrete | 714,925.00 | -661,056.00 | 53,869.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 53,869.00 | 0.00 |
| 32.32 | Fencing | 394,653.00 | -5,361.00 | 389,292.00 | 0.00 | 0.00 | 222,546.00 | 222,546.00 | 57.17 | 166,746.00 | 22,254.60 |
| 32.80 | Landscaping | 1,661,109.00 | 102,248.00 | 1,763,357.00 | 497,497.87 | 0.00 | 76,665.18 | 574,163.05 | 32.56 | 1,189,193.95 | 40,445.94 |
| 33.00 | Equipment & Techonology "Modernization" | 200,000.00 | -200,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 34.00 | Addendum 9 - Teton County Permit Comments | 50,000.00 | -50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 35.00 | Addendum 10 - QA/QC Comments | 50,000.00 | -50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 36.00 | Addendum 12 - For Sale Unit Improvements | 4,205,000.00 | -4,205,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 85.00 | Escalation After GMP | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | 0.00 | 100,000.00 | 100,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100,000.00 | 0.00 |
| | *Direct Trade Costs Total:* | *187,309,819.00* | *18,116,475.00* | *205,426,294.00* | *130,596,352.55* | *14,055,317.51* | *25,590,198.59* | *170,241,868.65* | 82.87 | *35,184,425.35* | *11,739,271.32* |

34,369,574.59

**Figure 5: Extract of Layton Payment Application #38 (Emphasis Added)**

40. Further, as discussed above, SMC agreed to the status of the Work through Payment Application #37. Additionally, it utilized nearly identical progress and backup for its Payment Applications #38 and #39, which were later approved and paid by Cody Lane, without noting any overrepresentation of Subcontractor costs.

41. A similar shortcoming was observed in FTI's assumptions related to its opinion that Layton misrepresented the subcontract values. Specifically, Layton's total cost for each line item of the SOV includes the bid amount from the subcontractor(s) and other allowances that were part of means and methods of performance of that work.

42. For example, Layton's original SOV value for line-item 26.00 (Electrical scope of work) was $22,270,931 while $21,054,829 of this amount was subcontracted and the remaining amount was to cover items not originally included in the bid. These additional amounts included costs such as allowances for undefined scope due to RFIs, exclusions, and credits for planned value engineering. A summary of these costs is presented in the following table:

---

[12] Ex. D5161.

**Table 3: Breakdown of the 26.00 Electrical GMP Line Item**[13]

| Description | Amount |
|---|---|
| Greiner Bid Amount | 21,054,829 |
| Amounts for Subcontractor Scope Exclusions | 94,000 |
| Allowance for Lighting | 25,000 |
| Allowance for Power | 195,000 |
| Allowance for Generators | 25,000 |
| Allowance for Site Electrical | 535,000 |
| Allowance for Temporary Power & Lighting | 330,000 |
| Allowance for Lutron Controls | 266,250 |
| Allowance for Other System Coordination | 283,000 |
| Credit for Value Engineering Items | (679,500) |
| Cost for Electrical Cost Escalation | 142,352 |
| **Total - GMP Amount** | **22,270,931** |

43. Similarly, the table below includes a breakdown of the 22.00 (Mechanical work) SOV line item. These breakdowns detail the difference between the subcontractor's bid and Layton's SOV amounts.

**Table 4: Breakdown of 22.00 Mechanical GMP Cost**[14]

| Description | Amount |
|---|---|
| Bid Amount | 30,252,620 |
| Amounts for Subcontractor Scope Exclusions | 275,000 |
| Allowance for Unforeseen Issues for Excavation and Underground Work | 10,000 |
| Allowance for Missing Drains and Piping | 60,000 |
| Allowance for Constructability and Other Issues | 140,000 |
| Allowance for Ductwork Not Shown on Plans | 10,000 |
| Allowance for Controls Coordination | 88,000 |
| Allowance for Other Related Scopes | 125,000 |
| Cost for Mechanical Escalation | 285,795 |
| **Total - GMP Amount** | **31,246,415** |

44. I reviewed the remaining line-items in the SOV and observed a similar pattern.

45. Therefore, FTI's opinion that Layton misrepresented the subcontract amounts is incorrect.

---

[13] Ex. D5488.
[14] Ibid.

### IV.B. **FTI's Analysis of Work Progress is Fatally Flawed and Ignores Contemporaneous Support for Layton's Work Progress.**

46. FTI also analyzed the percentage of work completed and included in Layton's Payment Applications. FTI provided its own evaluation of the completed work and opined that the FTI-verified progress is lower than the progress/billings by both Layton and its subcontractors.

47. In its report, FTI determined that the total Direct Trade Costs claimed by Layton was $10,722,709 more than the amounts claimed by the subcontractors in their Applications for Payment.[15]

48. FTI notes that 98% of this valuation difference was covered by 11 SOV line items, as presented in the table below.[16]

| Item # | Direct Trade Work | Valuation Difference: FTI vs Subcontractor |
|---|---|---|
| 26.00 | Electrical | $ (4,014,817) |
| 22.00 | Mechanical | $ (3,350,483) |
| 9.22 & 9.23 | Framing & Drywall – Exterior & Interior | $ (1,805,273) |
| 6.40 & 6.41 | Architectural Woodwork – Public & Residential | $ (496,702) |
| 8.40 & 8.45 | Exterior Glazing & Interior Glass | $ (486,182) |
| 8.10 | Doors, Frame & Hardware | $ (371,497) |
| 9.30 & 9.31 | Tile – Public & Residential | $ (201,228) |
| **Total** | **98% of Total FTI vs Subcontractor Difference** | **$ (10,726,183)** |

**Figure 6: Extract of FTI Report Valuation Difference**

49. I analyzed FTI's assessment and conclusions. The following sections detail my findings and opinions regarding FTI's evaluation of the work completed.

***FTI Ignored that SMC Payment Applications Cover the Same Work Claimed by Layton***

50. SMC agreed to the status of the Work through Payment Application #37 and issued Payment Applications #38 and #39 that reported nearly identical progress of the work during January and February 2024 as was reported by Layton in Payment Application #38. SMC Payment Applications 38, and 39 were later approved and paid by Cody Lane, without note of any overrepresentation of Subcontractor costs.

---

[15] Ex. P0944 (FTI Expert Report, para. 19).
[16] Ex. P0944 (Ibid, para. 21).

51. It appears that both SMC and Cody Lane agreed with the reported progress of the direct trade costs, in contradiction of the entirety of FTI's evaluation of the progress.

***<u>FTI's Assessment of Completed Work is Incorrect</u>***

52. I reviewed the details of FTI's evaluation of the completed work and noted the following errors and shortcomings:

53. FTI calculated the work progress for individual line items in the subcontractors' Payment Applications and subsequently calculated the total Project progress through February 2024.

54. FTI based its evaluation on its own observations of the site and adjusted the progress accordingly. For example, FTI noted that it "did not observe any architectural woodwork installed on site, despite the fact that both subcontractors had claimed field install progress for certain work elements."[17]

55. Relying on that assumption, it reduced the work progress for many architectural millwork line items to 0%. However, the Project team noted that wood ceiling installation, which was included in the architectural millwork scope of work, was underway prior to Layton's termination. The following photos show wood ceiling installation by Layton in Units 106, 108, and 205. Please note that these photos were taken on March 8, 2024 and Layton was terminated on March 11, 2024.




**Figure 7: Unit 106 Wood Ceiling [Photo Dated March 8, 2024 in Top Left Corner]**

[17] Ex. P0944 (FTI Expert Report, p. 23).



**Figure 8: Unit 106 Wood Ceiling [Photo Dated March 8, 2024 in Top Left Corner]**




**Figure 9: Unit 108 Wood Ceiling [Photo Dated March 8, 2024 in Top Left Corner]**




**Figure 10: Unit 205 Wood Ceiling [Photo Dated March 8, 2024 in Top Left Corner]**



**Figure 11: Unit 205 Wood Ceiling [Photo Dated March 8, 2024 in Top Left Corner]**

56. Further, as part of this analysis, for most subcontractors, FTI adjusted the progress on all Change Order line items to match the overall progress of the work for that subcontractor.

57. For example, the following excerpt from FTI's analysis shows that FTI adjusted work progress percentage for the Change Orders related to the Exterior Glazing work to 71% according to its evaluation of the overall progress.[18]

Attachment O - 8.40 Exterior Glazing, 8.41 Interior Glass Pay Application Analysis

| A | B | C | D | E | F | G | | H | I | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D+E) | THIS PERIOD | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE(D+E+F) | % (G / C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE RATE) | FTI VERIFIED % COMPLETE | FTI VERIFIED COST | NOTES |
| 001*2110 02*08880 0*0 | CO #1 - CCD 01 - Addendum 12 - PCO -0012 - Shower door revisions | 39,241.00 | 39,241.00 | 0.00 | 0.00 | 39,241.00 | 100.0% | 0.00 | 3,924.10 | 71.0% | $ 27,865.71 | Change orders percent complete matches percent complete of overall progressed work |
| 001*2110 02*08880 0*0 | CO #1 - CCD 01 - Addendum 14 - PCO -0014 - Custom framed mirrors in units and elevators | 230,750.00 | 164,951.00 | 0.00 | 11,726.00 | 176,677.00 | 76.6% | 54,073.00 | 17,667.70 | 71.0% | $ 163,859.52 | Change orders percent complete matches percent complete of overall progressed work |
| 002*2110 02*08880 0*0 | CO #2 - GMP CO #2 - Amendment #4 - Re-Baseline Subcontractors | 208,755.00 | 208,755.00 | 0.00 | 0.00 | 208,755.00 | 100.0% | 0.00 | 20,875.50 | 71.0% | $ 148,240.50 | Change orders percent complete matches percent complete of overall progressed work |
| 003*2110 02*08880 0*0 | CO #3 - CCD 38R1 ASI 24R2 - Addendum 24 | 20,216.00 | 20,216.00 | 0.00 | 0.00 | 20,216.00 | 100.0% | 0.00 | 2,021.60 | 71.0% | $ 14,355.73 | Change orders percent complete matches percent complete of overall progressed work |
| 004*2110 02*08880 0*0 | CO #4 - Mollerup Window Replacement for Densglass CO #25 ref. PCO-0799 | 101,289.00 | 101,289.00 | 0.00 | 0.00 | 101,289.00 | 100.0% | 0.00 | 10,128.90 | 71.0% | $ 71,927.05 | Change orders percent complete matches percent complete of overall progressed work |
| 005*2110 02*08880 0*0 | CO #5 - Replace burned glass - Budget Transfer - SDI to MGC | 1,630.00 | 1,630.00 | 0.00 | 0.00 | 1,630.00 | 100.0% | 0.00 | 163.00 | 71.0% | $ 1,157.49 | Change orders percent complete matches percent complete of overall progressed work |
| 007*2110 02*08880 0*0 | CO #7 - Mollerup Window Replacement August | 97,813.00 | 97,813.00 | 0.00 | 0.00 | 97,813.00 | 100.0% | 0.00 | 9,781.30 | 71.0% | $ 69,458.69 | Change orders percent complete matches percent complete of overall progressed work |
| 008*2110 02*08880 0*0 | CO #8 - Mollerup September Window Removal | 234,947.00 | 234,947.00 | 0.00 | 0.00 | 234,947.00 | 100.0% | 0.00 | 23,494.70 | 71.0% | $ 166,839.89 | Change orders percent complete matches percent complete of overall progressed work |
| 009*2110 02*08880 0*0 | CO #9 - CCD 71 - ASI 57 Unit 103 Window Well Updates | 1,209.00 | 1,209.00 | 0.00 | 0.00 | 1,209.00 | 100.0% | 0.00 | 120.90 | 71.0% | $ 858.53 | Change orders percent complete matches percent complete of overall progressed work |
| 010*2110 02*08880 0*0 | CO #10 - CCD 71 - ASI 57 Unit 103 Window Well Updates | 2,412.00 | 0.00 | 2,412.00 | 0.00 | 2,412.00 | 100.0% | 0.00 | 241.20 | 71.0% | $ 1,712.80 | Change orders percent complete matches percent complete of overall progressed work |
| | GRAND TOTAL | $5,405,124.00 | $4,285,315.00 | $27,412.00 | $11,726.00 | $4,324,453.00 | 80.0% | $1,080,671.00 | $432,445.30 | 71.0% | $ 3,838,271.05 | |

**Figure 12: Extract of FTI Evaluation of Exterior Glazing Scope Progress**

58. FTI's methodology is incorrect as this approach assumed, without justification or confirming evidence, that the Change Order work was progressing at the same rate as the overall scope of work.

59. Meanwhile, actual evidence of progress on the Project illustrates that FTI's assumption—and thus its methodology based on that assumption—is incorrect. The majority of

---

[18] Ex. P0944 (FTI Expert Report, p. 92).

Change Orders for the Exterior Glazing scope of Work had already been approved at 100% complete. As a specific example of the failings in this general approach adopted by FTI, the line items for CO #7 and CO #8, which are related to Exterior Glazing, are for work specifically completed in August and September 2023. It is therefore unreasonable for FTI to claim that these Change Orders were less than 100% complete.

60. FTI's general approach to assessing the Change Order scope is artificially lowering its "verified % complete." I determined that over $2.2M of FTI's $10.7M total valuation difference is a direct result of solely lowering Change Order progress to match the overall progress for the related trade.

***<u>FTI Does not Consider Contemporaneous Project Data in Forming Its Opinions</u>***

61. As already summarized, CCI observed and evaluated work progress contemporaneously and agreed with the progress of the work—the work complete—as reported in Layton's Payment Application.

62. Additionally, the Architect certified and approved Layton's representation of progress of the work through Payment Application #37. In my experience, when an architect certifies a payment application, that is an indication that the architect agrees with what is in the payment application and recommends that the owner pay it. In my experience, an architect does not certify a Payment Application if it does not agree with what is contained in it.

63. Finally, SMC adopted the status of the work reported by Layton in Payment Application #37.

64. FTI's opinions are contradictory to CCI's observations and evaluation of the work progress, the Architect's certification and approval of the scope and progress of the work reported by Layton, and SMC's adoption of the status of work that was reported by Layton, at least through December 2023.

65. I noted that most of FTI's claim regarding the misrepresentation of the progress of the work was related to the work that was included in Layton's Payment Application #37. This Payment Application, in particular:

- was reviewed by CCI and redlined by CCI/the Architect,
- was certified by the Architect,
- was paid for by the Owner, and
- was adopted by the completion contractor (SMC).

66. In summary, FTI's analysis is flawed and it contradicts contemporaneous Project documentation. FTI has not provided any reliable or persuasive basis upon which to determine that Layton's Payment Applications misrepresented subcontractor billings or progress of the work.

## V. CERTIFICATION

67. The findings and conclusions expressed in this statement are based on my independent review and analysis, as described herein. Amendments or additions to this Report may be required as a result of the testimony of any other witness at trial.

Respectfully submitted,

**Pasha Ameli, Ph.D., P.E.(CA)**
Managing Director
Ankura